1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10    CHARLES T. DAVIS,

11              Plaintiff,                     No. CIV S-04-0878 GEB DAD P

12         vs.

13    C/O KISSENGER, et al.,                   ORDER AND

14              Defendants.                    FINDINGS AND RECOMMENDATIONS

15    _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action.  All

17    defendants have joined in a motion to dismiss the entire action or selected claims pursuant to

18    non-enumerated Rule 12(b) and to dismiss selected claims pursuant to Rule 12(b)(6) of the

19    Federal Rules of Civil Procedure.  Plaintiff opposes dismissal of any claim.

20                              BACKGROUND

21              In his civil rights complaint filed May 3, 2004, plaintiff names nine defendants

22    and alleges claims that arose from events that occurred between August 21, 2001, and November

23    30, 2001, at High Desert State Prison (HDSP).  Plaintiff's May 13, 2004 motion to substitute

24    defendants was construed by the court as a motion for leave to amend, and the motion was

25    granted.  Plaintiff subsequently moved to strike his previous motion and proceed on his original

26    complaint.  The motion was granted on December 20, 2005.

1    Upon screening plaintiff's original complaint, the court determined that the pro se

2    pleading, liberally construed, states cognizable federal claims against administrative,

3    correctional, and medical staff at HDSP in 2001.  The court found that plaintiff's allegations link

4    all nine defendants to the claims of multiple incidents of excessive force, denial of medical care,

5    retaliation, harassment, and due process violations in disciplinary proceedings.

6    Plaintiff's complaint has been served on all nine defendants.  Pursuant to an

7    extension of time granted on April 3, 2006, defendants Runnels, Kissinger (sued as Kissenger),

8    Qualls, Ingwerson, Money, Garrison, and Norlin filed their motion to dismiss on April 28, 2006.

9    Defendant Peery joined in the motion by notice filed May 31, 2006, and defendant Baker joined

10    in the motion by notice filed July 13, 2006.  Plaintiff's opposition to the motion was filed on May

11    8, 2006.  Pursuant to an extension of time granted on May 11, 2006, defendants filed a reply on

12    June 2, 2006.  Plaintiff filed a reply to the reply, and defendants moved to strike the unauthorized

13    surreply.

14                                   PLAINTIFF'S CLAIMS

15    For reference, plaintiff's eleven claims for relief are summarized here:

16    Claim One:  Defendant Kissinger engaged in racial intimidation that led to a
       group appeal against him on August 21, 2001, after he deliberately provoked
17    black inmates by (1) searching their cells while they were on lockdown status, just
       days after a previous search, (2) using racial slurs, and (3) routinely withholding
18    food or spitting in inmates' food before delivering it; defendant Kissinger used
       excessive force on August 23, 2001, when he pulled plaintiff's arm through the
19    food tray slot in the cell door while handcuffing him and deliberately put pressure
       on plaintiff's injured wrist, in violation of plaintiff's Eighth Amendment rights;

20

21    Claim Two:  Excessive force was used by defendants Baker, Peery, Qualls, and
       Money during a cell extraction on August 23, 2001, after defendant Kissinger
22    falsely claimed that plaintiff had assaulted him, in violation of plaintiff's Eighth
       and Fourteenth Amendment rights;

23    Claim Three:  Defendants Ingwerson, Money, and Peery failed to properly
       supervise their subordinates during the cell extraction on August 23, 2001, in
24    violation of plaintiff's Eighth and Fourteenth Amendment rights;

25    Claim Four:  After plaintiff was removed from his cell on August 23, 2001, he
       was placed in a holding cage where defendants Garrison (a Medical Technical
26    Assistant), Money, and Ingwerson denied plaintiff his medications for pain and

high blood pressure, and defendant Garrison refused to examine plaintiff or allow plaintiff to see a doctor, in deliberate indifference to plaintiff's serious medical needs and in violation of plaintiff's Eighth Amendment rights;

Claim Five:  At a disciplinary hearing conducted by defendant Norlin, the defendant denied plaintiff all requested witnesses and found plaintiff guilty of a lesser included offense, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

Claim Six:  Defendant Runnels instituted policies and practices that condoned misconduct and constitutional violations by subordinates, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

Claim Seven:  Defendants Kissinger, Peery, and Qualls deprived plaintiff of equal protection of the laws and violated federal criminal laws when they subjected plaintiff to racially motivated excessive force;

Claims Eight through Eleven:  Defendants Kissinger, Peery, Runnels, and Norlin violated plaintiff's rights under the California Constitution, state regulations, and state statutes.

## DEFENDANTS' MOTION TO DISMISS

I. <u>Defendants' Arguments</u>

Defendants contend that the court should dismiss this entire action or parts of it pursuant to non-enumerated Rule 12(b) because plaintiff did not exhaust administrative remedies as to each claim and each defendant prior to bringing this action.  In the alternative, defendants move to stay this case pending United States Supreme Court decisions in two Sixth Circuit cases applying a total-exhaustion rule.  Defendants also seek to dismiss certain claims pursuant to Rule 12(b)(6) on the ground that those claims fail to state a cause of action.

A. <u>Failure to Exhaust</u>

Defendants assert that plaintiff filed grievances against some defendants but not others and that his grievances do not track his complaint in all particulars.  Defendants offer declarations describing the search of available records to determine whether plaintiff filed appeals regarding all claims arising from the three separate incidents that occurred on August 21, 2001, August 23, 2001, and November 20, 2001, and whether plaintiff pursued each appeal to the third level of administrative review.  Defendants present documentation of five appeals in which

1   plaintiff addressed events that occurred on the relevant dates:  (1) HDSP Log No. 01-03264; (2)

2   HDSP Log No. 01-2741/IAB No. 0105081 (a group appeal); (3) HDSP Log No. 01-03113/IAB

3   No. 0106070; (4) HDSP Log No. 01-02900; and (5) HDSP Log No. 01-03994/IAB No. 108329

4   (Def'ts' Mot. to Dismiss at 7, Ex. A & Attachs. 2-6; Ex. B & Attachs. 2-6.)

5            Defendants concede that plaintiff exhausted the following claims:  claims of

6   excessive force and other violations on August 23, 2001, by defendants Money and Peery, but

7   not by defendants Baker and Qualls (plaintiff's Claim Two); claims of failure to supervise

8   subordinates by defendants Ingwerson, Money, and Peery (plaintiff's Claim Three); claims of

9   deliberate indifference to medical needs by defendants Money and Ingwerson, but not by

10  defendant Garrison (plaintiff's Claim Four); and claims of conspiracy and deprivation of rights

11  by defendant Kissinger, but not by defendants Peery and Qualls (plaintiff's Claim Seven).

12           Defendants assert that plaintiff filed a grievance concerning excessive force and

13  racial discrimination by defendant Kissinger but did not pursue the grievance beyond the first

14  formal level (plaintiff's Claim One).  Defendants state that no grievances were found related to

15  plaintiff's Claims Five (defendant Norlin's actions on November 20, 2001), Six (misconduct by

16  defendant Runnels), and Eight through Eleven (state law claims).

17           Defendants argue that this entire action should be dismissed without prejudice for

18  failure to exhaust all claims prior to bringing the action.  If the unexhausted claims are severed

19  and dismissed without prejudice, defendants argue that plaintiff should be allowed to proceed

20  only on Claim Two against defendants Peery and Money; Claim Three against defendants

21  Ingwerson, Money, and Peery; Claim Four against defendants Money and Ingwerson; and Claim

22  Seven against defendant Kissinger.

23           Defendants suggest that the court may want to stay this action.  Defendants cite

24  two unpublished Sixth Circuit cases in which certiorari was granted on March 6, 2006.  See

25  Jones v. Bock, 135 Fed. Appx. 837 (6th Cir. 2005), cert. granted, ___ U.S. ___, 126 S. Ct. 1462

26  (U.S. Mar. 6, 2006) (No. 05-7058); Williams v. Bouchard, 136 Fed. Appx. 859 (6th Cir. 2005),

1   cert. granted sub nom. Williams v. Overton, ___ U.S. ___, 126 S. Ct. 1463 (U.S. Mar. 6, 2006)

2   (No. 05-7142).  Defendants state that the question presented in the Sixth Circuit cases is whether

3   an inmate's failure to exhaust one or more of his claims under the PLRA requires dismissal of

4   the unexhausted claims or the entire suit.  Defendants contend that the Supreme Court may

5   overturn Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005), petition for cert. filed, 74 U.S.L.W. 3425

6   (U.S. Jan. 6, 2006) (No. 05-878), in which the Ninth Circuit held that unexhausted claims may be

7   dismissed and exhausted claims may proceed.

8          In support of their motion in the alternative to stay this action, defendants cite

9   Mediterranean Enters., Inc. v. Ssangyong Corp., 708 F.2d 1458, 1465 (9th Cir. 1983) (a federal

10  district court "possesses the inherent power to control its own docket and calendar"), and Leyva

11  v. Certified Grocers of California Ltd., 593 F.2d 857, 863 (9th Cir. 1979) ("A trial court may,

12  with propriety, find it is efficient for its own docket and the fairest course for the parties to enter

13  a stay of an action before it, pending resolution of independent proceedings which bear upon the

14  case," whether the separate proceeding is judicial, administrative, or arbital, and whether or not

15  the separate proceeding is controlling of the action before the court).  Defendants acknowledge

16  that a stay should not be granted unless it appears likely that the other proceedings will be

17  concluded within a reasonable time in relation to the urgency of the claims presented to the court.

18  593 F.2d at 864.  Defendants assert that the Supreme Court is expected to squarely address the

19  issue of prisoner civil rights complaints that contain both exhausted and unexhausted claims.

20  Defendants argue that the Supreme Court may substantially simplify the exhaustion issues that

21  are before the court in the present case.  Defendants believe that the Supreme Court will overturn

22  the Ninth Circuit's decision in Lira v. Herrera and that plaintiff will be precluded from pursuing

23  the mixed complaint that is before this court.

24      B.  Failure to State Claims for Relief

25          Defendants contend that plaintiff's seventh claim for relief, alleging violations of

26  federal criminal law, and his eighth through eleventh claims for relief, alleging violations of state

1   law, fail to state cognizable claims.  Defendants argue that plaintiff cannot turn this civil rights

2   lawsuit into a criminal action and note that this court denied plaintiff's request for criminal

3   certification by order filed December 20, 2005.  Defendants conclude that these five claims for

4   relief should be dismissed for failure to state claims upon which relief may be granted.

5   II.  Plaintiff's Opposition

6              Plaintiff moves to strike defendants' motion as insufficient under Rule 12(f).  He

7   argues that state notice of claim statutes do not apply to § 1983 actions and that prison officials

8   should not be encouraged to fashion grievance procedures that defeat prisoners' claims.

9              In addition, plaintiff contends that he filed an appeal against each and every

10   defendant and pursued every appeal to the third and final level.  He asserts that every appeal was

11   found to be unsubstantiated or unfounded, and every defendant was exonerated at every level by

12   CDCR supervisors and administrators pursuant to their policy of covering up violations of

13   prisoners' rights in order to shield themselves from litigation.  Plaintiff describes the CDCR as

14   "incompetent by reason of bias" and asks the court to take judicial notice of a lawsuit he has

15   brought against the state attorney general alleging that the office of the state attorney general is

16   also incompetent by reason of bias.

17              Plaintiff argues that he exhausted his claims against the defendants as follows:

18   **Defendant Kissinger**:  all claims were alleged in HDSP Log No. 01-02741/IAB
     No. 0105081 and HDSP Log No. 01-02900/IAB No. 0108852, and pursued to the
19   third level;

20   **Defendants Money, Perry, Qualls, Baker, and Ingwerson**:  each defendant was
     mentioned in HDSP Log No. 01-02900/IAB NO. 0108852 and the claims were
21   alleged against every person on the cell extraction team, putting prison officials on
     notice that all defendants violated plaintiff's rights;
22
23   **Defendant Garrison**:  HDSP Log No. S-01-03113[1]/IAB No. 0106070 specifically
     refers to the conduct of MTA Garrison and was pursued to the third level;
     although the third level response is missing from plaintiff's central file, a copy of
24   the appeal was filed in Davis v. Kissenger, case No. CIV S-01-1868 (E.D. Cal.);

25   ─────────────────

26      [1]  Plaintiff refers to Appeal No. HDSP-S-01-0311.  The exhibit cited in support of the
     reference reveals that the correct number is 01-03113.

1

**Defendant Norlin**:  HDSP Log No. 01-03902 and HDSP Log No. C-01-03486
2   were appealed to the third level, although the second and third level responses are
    missing from plaintiff's central file and were not previously filed in this court;
    plaintiff has filed 229 inmate appeals to date and believes the records department
3   negligently failed to file every appeal in his central file.

4   **Defendant Runnels**:  HDSP Log No. 01-02900/IAB No. 0108852 placed the
    warden "at the center of the controversy" and made him aware of all the facts of
5   this action.

6   (Pl.'s Opp'n to Def'ts' Mot. to Dismiss at 6-10.)  Plaintiff argues that he has demonstrated

7   exhaustion of all claims against all defendants and that the burden shifts to defendants.

8              Plaintiff declares under penalty of perjury that he "did personally exhaust to the

9   third and final level each appeal on defendant Norlin and defendant Baker in this action, that the

10  appeals should have been in his central file but a limited search of that file revealed that many

11  appeals were missing that were exhausted to the third level, that he made a good-faith effort to

12  locate the appeals but was granted only a few hours to look through his central file, which

13  contains more than 229 appeals, that his request for prison staff to contact Sacramento for copies

14  of third level responses was denied, and that the original of his appeal to the third level on

15  defendant Norlin was in his custody until it was lost, along with other documents, when he was

16  in administrative segregation.  (Id., Decl. of Charles T. Davis.)

17             Plaintiff offers documentary evidence of his efforts to obtain copies of missing

18  third level decisions.  (Id., Attach. 1 at 2-6.)  He provides copies of the appeals and decisions for

19  appeals No. 01-02741, 01-03902, 01-03486, 01-02900, 01-03113, 01-03644, 01-02741, and 01-

20  03264.  (Id., Attach. 1 at 7-16, 17-26, 27-32, 33-43, 44-51, 52-61, 62-65, and 66-68,

21  respectively.)  Plaintiff also offers copies of state tort claims and decisions on those claims, as

22  well as a complaint to the Lassen County District Attorney.  (Id., Attachs. 2 & 3.)

23  III.  Defendants' Reply

24             Defendants contend that nothing in plaintiff's opposition defeats their motion.

25  Defendants note first that plaintiff fails to address their argument that the seventh through

26  eleventh causes of action fail to state a claim for which relief may be granted.  With regard to

7

1    plaintiff's other causes of action, defendants contend that plaintiff effectively concedes that he

2    failed to exhaust available administrative remedies as to all defendants when he argues that the

3    appeal system is inadequate.  To the extent that plaintiff has nevertheless asserted exhaustion of

4    all claims as to each defendant, defendants offer a chart showing plaintiff's exhausted and

5    unexhausted claims.  Defendants dispute plaintiff's argument that he "mentioned" five

6    defendants in 01-02900 and thereby exhausted his claims against all five defendants, when the

7    language of the appeal is clearly directed only at defendant Ingwerson.  Defendants observe that

8    plaintiff admits he was unable to find an exhausted grievance against MTA Garrison and merely

9    asks the court to accept his memory of exhaustion or to search for evidence in other case files.

10   Defendants admit that plaintiff has filed grievances referring to MTA's, but they argue that

11   generalized references cannot serve to exhaust plaintiff's specific claims against MTA Garrison.

12   Defendants reiterate that there is no evidence of exhaustion of claims against defendants Norlin

13   and Runnels.  Defendants conclude with the observation that plaintiff did not offer any

14   persuasive opposition to their suggestion of a stay.

15   IV.  Plaintiff's Reply to Defendants' Reply

16          Plaintiff "moves the court to strike each of the defendant's defenses as insufficient

17   pursuant to F.R.C.P., Rule 12(f)," offers argument in support of his motion for a three-judge

18   panel, and concludes that defendants' Rule 12(b) motion is an insufficient defense.

19   V.  Defendants' Motion to Strike Plaintiff's Surreply

20          Citing Local Rule 78-230(m), defendants ask the court to strike plaintiff's reply as

21   procedurally improper.  Defendants also note that their motion to dismiss is not subject to a Rule

22   12(f) motion to strike because their motion is not a pleading and Rule 12(f) authorizes the court

23   to order stricken from any pleading "any insufficient defense or any redundant, immaterial,

24   impertinent, or scandalous matter."

25   /////

26   /////

ANALYSIS

Rule 12(f) authorizes motions to strike matter "from any pleading." Fed. R. Civ. P. 12(f). By definition, a motion to dismiss is not a pleading. Fed. R. Civ. P. 7(a). Accordingly, the court rejects plaintiff's motion to strike defendants' motion pursuant to Rule 12(f).

Pursuant to the order filed in this action on January 18, 2006, the parties are required to brief all motions to dismiss and all Rule 12 motions pursuant to Local Rule 78-230(m). Order filed Jan. 18, 2006, at 3. Briefing consists of (1) a motion, (2) the non-moving party's opposition or statement of no opposition to the motion, and (3) the moving party's reply, if any. Local Rule 78-230(m). The court did not order plaintiff to submit additional briefing, and plaintiff did not obtain leave of court to respond to defendants' reply. The response filed by plaintiff merely rehashes arguments presented in his opposition. Accordingly, the court will grant defendants' motion to strike plaintiff's unauthorized filing.

I. Defendants' Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

A. Legal Standards

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S. 731, 741 (2001). The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. Id. at 741 n.6. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

9

1   procedurally defective administrative grievance or appeal.  Woodford v. Ngo, ___ U.S. ___, 126

2   S. Ct. 2378, 2382 (2006).

3           In California, state regulations permit prisoners to appeal "any departmental

4   decision, action, condition, or policy which they can demonstrate as having an adverse effect

5   upon their welfare."  Cal. Code Regs. tit. 15, § 3084.1(a).  Most appeals progress from an

6   informal review through three formal levels of review.  See Cal. Code Regs. tit. 15, § 3084.5.  A

7   decision at the third formal level, also referred to as the director's level, is not appealable and

8   will conclude a prisoner's administrative remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and

9   3084.5(e)(2).  A California prisoner is required to submit an inmate appeal at the appropriate

10  level and proceed to the highest level of review available before filing suit.  Butler v. Adams, 397

11  F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

12          The PLRA exhaustion requirement creates an affirmative defense that a defendant

13  may raise in a non-enumerated Rule 12(b) motion.  Wyatt v. Terhune, 315 F.3d 1108, 1117-19 &

14  nn.9 & 13 (9th Cir. 2003).  The defendant bears the burden of raising and proving the absence of

15  exhaustion. 315 F.3d at 1119.  "In deciding a motion to dismiss for a failure to exhaust

16  nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of

17  fact."  Id. at 1119-20.  "I[f] the district court looks beyond the pleadings to a factual record in

18  deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary

19  judgment–then the court must assure that [the prisoner] has fair notice of his opportunity to

20  develop a record."[2]  Id. at 1120 n.14.

21          When the district court concludes that the prisoner has not exhausted

22  administrative remedies on a claim, "the proper remedy is dismissal of the claim without

23  prejudice."  Id. at 1120.  See also Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005) (holding

24  that a total-exhaustion rule is not mandated by the PLRA), petition for cert. filed, 74 U.S.L.W.

25

26          [2]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
     pursuant to non-enumerated Rule 12(b).  (See Order filed Jan. 18, 2006, at 3-4.)

1    3425 (Jan. 6, 2006) (No. 05-878).  If the unexhausted claims are not intertwined with the

2    properly exhausted claims, the court should dismiss the unexhausted claims.  427 F.3d at 1175.

3    When the complaint includes exhausted and unexhausted claims that are closely related and

4    difficult to untangle, the court should dismiss the complaint with leave to amend to allege only

5    fully exhausted claims.  Id. at 1176.

6         B.  Discussion

7              Some of the claims in this action were previously presented to the court in Charles

8    T. Davis v. C/O Kissenger, et al., case No. CIV S-01-1868 FCD JFM P (E.D. Cal.), filed October

9    4, 2001.[3]  That case was dismissed without prejudice on March 18, 2003, for failure to exhaust

10   administrative remedies prior to bringing the suit on October 4, 2001.

11             In the findings and recommendations that were adopted in full on March 18, 2003,

12   the magistrate judge found that plaintiff's first claim, alleging that "defendants Kissenger, Baker,

13   Peery, Qualls, Ingwerson, and Money violated his rights under the Eighth Amendment and the

14   California Tort Claims Act by using, failing to intervene in, or condoning the use of excessive

15   force against him," was exhausted on February 13, 2002, when the claim was rejected at the

16   director's level.  (Findings & Recommendations filed in case No. CIV S-01-1868 on Jan. 13,

17   2003, at 2-3 (citing Ex. B to Def'ts' Am. Mot. to Dismiss filed June 10, 2002).)  The magistrate

18   judge found that plaintiff's second claim, alleging that defendants Garrison, Norlin, and seven

19   others "acted with deliberate indifference to plaintiff's serious medical needs by failing to obtain

20   medical attention, failing to provide adequate medical care, or failing to process emergency

21   appeals from plaintiff seeking such care," was also exhausted on February 13, 2002, with regard

22   to medical needs arising from the August 23, 2001 incident of excessive force.  (Id.)  The

23   magistrate judge found that plaintiff's third claim, alleging violations by defendants Kissinger,

24   Peery, Qualls, Ingwerson, and Money of plaintiff's rights to be free of racial discrimination, was

25

26        [3]  A court may take judicial notice of court records.  See MGIC Indem. Co. v. Weisman,
     803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980).

1   exhausted as to defendant Kissinger in a grievance resolved on January 15, 2002, and as to all

2   five defendants regarding the incident of excessive force in the grievance resolved on February

3   13, 2002.  (Id. at 2-4 (citing Exs. B & D to Def'ts' Am. Mot. to Dismiss filed June 10, 2002).)

4   The magistrate judge found that plaintiff did not initiate the grievance process on his fourth

5   claim, in which he alleged that defendant Runnels violated the rights of inmates to be free from

6   the fear of terror, abuse, and death at the hands of bigoted custodians, until November 2001 and

7   there was no evidence of exhaustion.  (Id. at 2 & 4.)

8          Claim One/Defendant Kissinger:  Racial Intimidation & Excessive Force

9          Defendants concede that plaintiff filed a grievance concerning defendant

10   Kissinger's racial discrimination as well as the defendant's alleged use of excessive force on

11   August 23, 2001, but they contend that plaintiff did not pursue the grievance beyond the first

12   formal level.  Plaintiff argues that all claims against defendant Kissinger were alleged in Appeal

13   No. 01-02741 and Appeal No. 01-02900 and both were appealed to the third level.

14          Defendants' motion includes a copy of Appeal No. 01-02741, dated August 20,

15   2001.  Plaintiff described the following problem:

16          C/O T. Kissenger [sic] of Bld C-5 is out of control.  He
          systimaticly [sic] withholds dinner trays from black inmates in
17          violation of Title 15 sec. 3050(a).  He constantly disrespects black
          inmates by trying to intimidate them, and uses a legitimate right to
18          search an inmate's cell for a illegal purpose in violation of Title 15
          sec. 3287(2).  He constantly demonstrates racist overtures toward
19          black inmates specificly [sic] in violation of the Ku Klux Klan Act
          of 1871 actionable under 42 U.S.C. sec. 1983.

20

21   (Def'ts' Mot. to Dismiss Ex. A, Attach. 2.)  Plaintiff requested that the appeal be processed as a

22   group appeal seeking emergency action and concluded that "This C/O needs to be removed from

23   working around inmates period.  As you recall, staff's failure to act on these types of appeals

24   resulted in an assault on B Yard in June 2001."  (Id.)

25          Appeal No. 01-02741 was partially granted at the first and second levels.  In the

26   director's level decision dated January 15, 2002, the appeal is described as follows:

1
2
3

It is the appellant's position that he was harassed by custody staff.
The appellant contends that Correctional Officer (CO) Kissinger is
racially discriminating against him.  The appellant believes that the
officer's actions were unprofessional and unlawful.

4   (Id.)  The appeal was denied at the third level on the grounds that it was appropriately granted in

5   part at the first and second levels and that plaintiff failed to support his appeal issue with

6   sufficient evidence.  (Id.)

7          Defendants' records include copies of two inmate appeals submitted by plaintiff

8   on August 26, 2001:  Appeal No. 01-02900 and Appeal No. 01-03113.  Plaintiff has cited the

9   first of these two appeals as the one that exhausted his claim of excessive force by defendant

10  Kissinger.  The undersigned is unable to find that Appeal No. 01-02900 presented a claim of

11  excessive force by defendant Kissinger.  However, Appeal No. 01-03113 did allege facts that

12  encompass such a claim.

13          In Appeal No. 01-03113, plaintiff described the following problem:

14
15
16
17
18
19
20
21
22
23
24
25
26

On August 23, Seargent [sic] Peery et. al. responded to a call from
C/O Kissenger [sic] (false allegations that he was assaulted through
a tray slot) and when he reached the door I tryed [sic] to give him a
602 I was writing up on C/O Kissenger [sic] for deliberately trying
to provoke me by putting the handcuffs on what he knew to be a
sensitive area of my left wrist that had a splint on it and had just
had the cast removed a month or so ago and was not healed, thus, I
had a splint on it.  Seargent [sic] Peery rejected the 602 and yelled,
"Put your arm through the tray slot."  I asked Seargent [sic] Peery
to put the handcuff above the splint on my left wrist, he did so as I
asked, however, once he secured the handcuff on my left wrist as
tight as he could outside of the tray slot, intentionally grabed [sic]
my left wrist and started twisting and bending it several times over
as I yelled in excruciating pain and asked, "Why are you doing
this?"  Sgt. Peery then stated, "Put your other arm through the tray
slot," at which time I complied.  Once handcuffed and out [of] the
cell, Sgt. Peery and the rest of his crew abused me even more by
lifting my arms up above my head from the back while I was
handcuffed and caused a rupture to my upper left back.  On August
24, 2001 I saw Dr. Sandham for the back injury and he stated they
had ruptured the muscel [sic].  Dr. Sandham also stated that the re-
injury to my left wrist would require something for the pain and
treatment.  Sgt. Peery deliberately inflicted injury upon me for no
other reason but to cause pain and suffering in violation of Civil
Code 3294.  His actions and that of his support team were

deliberate and malicious.  When in the program office I found C/O Kissenger [sic] and Sgt. Peery fabricated a host of false allegations of statements they was contriving to put in their reports.  I had asked to see the MTA several times and he ignored me for 2 hours and when he finally did come to see me I asked him to make a note of the impressions on my left wrist, he looked but I did not see him write anything down.  Further I asked Sgt. Mooney [sic] in addition to the MTA to see the doctor & for my back and high blood pressure meds and they refused.  The MTA was deliberately indifferent to my medical needs and Sgt. Peery, Sgt. Mooney [sic], and Lt. R. Ingwerson were all aware that C/O Kissenger [sic] had several 602s out on him for racism targeted at blacks specifically [sic] (there is now a group staff complaint against C/O Kissenger [sic] for targeting black inmates filed with the appeals coordinator on August 22, 2001, a day before the incident).  They are all witnesses in this matter and will testify in court when called.

Sgt. Peery deliberately falsified a report in the presence of Lt. Ingwerson and worked in concert with C/O Kissenger [sic] to allege false allegations and to commit an intentional tort.  I request compensatory damages in the amount of $43,900.00.

Further, when escorting me to the program office I related to the ones transferring me that C/O Kissenger [sic] was practicing his Klan activity on blacks and Sgt. Peery and another C/O who was behind me said in concert, "that's the way we do it up here."

Evidently, the administration not only supports and condones racist practices, it rewards it.  This activity is violates [sic] the Institutionalized Persons Act (CRIPA) 42 U.S.C. section 1997 et. seq.  It is a practice that has a consistent pattern and is pervasive.  I want to know what are you going to do about it.

I want the false allegations taken out of my record.

(Def'ts' Mot. to Dismiss, Ex. A, Attach. 4.)  Plaintiff requested that his appeal be treated as an emergency appeal, that disciplinary action be taken, and that criminal prosecution be considered. (Id.)

Appeal No. 01-03113 was partially granted at the first level.  Plaintiff submitted his appeal to the second level on the grounds that racial discrimination was present at the institution and he had been assaulted and subjected to illegal confinement for exercising a constitutional right.  Plaintiff requested money damages and removal of false allegations from his central file.  The response at the second level describes the appeal as a staff complaint alleging

14

1   excessive force by Kissinger, Peery, Money, and Ingwerson on August 23, 2001.  The appeal was

2   partially granted.  (Id.)

3                  Plaintiff submitted Appeal No. 01-03113 to the third level on December 12, 2001,

4   stating that he wants money damages for his injuries as well as an investigation of racism and

5   "Ku Klux Klan splinter groups runing [sic] lose [sic] up here at High Desert and the Warden is

6   doing nothing about."  (Id.)  In the director's level appeal decision dated February 13, 2002,

7   plaintiff's appeal is described as concerning harassment by custody staff, unnecessary force by

8   staff, and unprofessional and racially motivated actions by staff.  The decision acknowledges

9   plaintiff's request for an investigation and monetary damages.  The appeal was denied on the

10  grounds that plaintiff's allegations were reviewed and properly evaluated by staff, that the

11  documentation and arguments were persuasive that plaintiff had failed to support his appeal issue

12  with sufficient evidence, that no staff misconduct occurred, that plaintiff's appeal was

13  appropriately granted in part, and that plaintiff's request for monetary damages lacked merit.

14                  The undersigned finds that defendants' own evidence shows that plaintiff

15  exhausted allegations of ongoing racial discrimination by defendant Kissinger by pursuing

16  Appeal No. 01-02741 to the director's level and that he exhausted allegations of excessive force

17  by defendant Kissinger on August 23, 2001, by pursuing Appeal No. 01-03113 to the director's

18  level.  This finding is consistent with the determination in case No. CIV S-01-1868 that plaintiff

19  exhausted his claim that defendant Kissinger violated his right to be free of racial discrimination

20  in the grievance resolved at the director's level on January 15, 2002, and that plaintiff exhausted

21  his claim of excessive force by defendant Kissinger in the grievance resolved at the director's

22  level on February 13, 2002.  Defendants' motion to dismiss should be denied as to Claim One.

23          Claim Two/Defendants Baker, Peery, Qualls, & Money:  Violations on August 23, 2001

24                  Defendants concede that plaintiff exhausted his claims of excessive force and

25  other violations on August 23, 2001, as to defendants Money and Peery, but they contend he did

26  not exhaust such claims against defendants Baker and Qualls.  Plaintiff argues that he mentioned

15

1  defendants Money, Peery, Qualls, Baker, and Ingwerson in Appeal No. 01-02900 and alleged his

2  claims against every person on the cell extraction team, thereby putting prison officials on notice

3  that all of these defendants violated his federally protected rights.

4          In Appeal No. 01-02900, dated August 26, 2001, plaintiff commenced his

5  description of the problem as follows:

6              On August 23, 2001, Lt. R. Ingwerson of C-yard deliberately [sic]
             authorized segregated housing for me on what she knew or should
7              have known were a host of false allegations filed by C/O Kissenger
             [sic] and Seargeant [sic] Peery.  She also supported, encouraged,
8              and condoned out-right Ku Klux Klan activity to take place on her
             yard in violation of the Ku Klux Klan Act of 1871 actionable under
9              42 U.S.C. sec. 1983.  She supported Sgt. Mooney [sic], Sgt. Peery,
             and her other support staff to continue making racial slurs at me
10             while I was handcuffed in the cage housed in the program office.

11  (Def'ts' Mot. to Dismiss, Ex. A, Attach. 5.)  After a detailed account of his conversation with

12  defendants Ingwerson and Peery on August 23, 2001, plaintiff concluded that defendant

13  Ingwerson was racist and failed to protect him from cruel and unusual punishment by "bigoted

14  custodians."  Plaintiff asserted his intention to take legal action, requested damages, cited his

15  staff complaint and group appeal against defendant Kissinger, and accused defendant Kissinger

16  of retaliation.  Plaintiff requested that the appeal be processed as an emergency appeal and

17  described the grievance as "a disciplinary action subject to criminal prosecution."  (Id.)  The

18  appeal was partially granted at the second level and denied at the third level.  Plaintiff's

19  statements of dissatisfaction with the first and second level decisions do not refer to defendants

20  Baker and Qualls or to the cell extraction team as a group.

21          The undersigned is unable to find in Appeal No. 01-02900 any mention of

22  defendant Baker or defendant Qualls, any allegation that can be construed as a claim against

23  every person on the cell extraction team, or any generalized allegation except the assertion that

24  defendant Ingwerson, defendants Money and Peery, and "her other support staff" continued to

25  make racial slurs while plaintiff was in the holding cage on August 23, 2001.

26  /////

1    However, in Appeal No. 01-03113, set forth in the discussion of Claim One,

2  <u>supra</u>, plaintiff did allege claims against the entire cell extraction team.  Plaintiff stated that

3  defendant Peery and others  responded to defendant Kissinger's call, that Peery subjected

4  plaintiff to excessive force while handcuffing him, and that, after plaintiff was handcuffed, "the

5  rest of [Peery's] crew abused [him] even more" by lifting his arms up over his head from the

6  back, causing a rupture to his upper left back.  (Def'ts' Mot. to Dismiss, Ex. A, Attach. 4.)

7  Plaintiff alleged that the actions of defendant Peery and his support team were deliberate and

8  malicious.  (<u>Id.</u>)

9    In his civil rights complaint, plaintiff alleges that defendant Baker was defendant

10  Kissinger's partner and witnessed Kissinger's actions, watched Peery inflict pain on plaintiff, and

11  did not act to protect plaintiff.  (Compl. at 6-7.)  Plaintiff alleges that defendant Qualls was part

12  of the team that responded with defendant Peery and that it was defendant Qualls who acted with

13  defendant Peery to raise plaintiff's arms over his head from the back and thereby caused a rupture

14  to plaintiff's back.  (<u>Id.</u>)

15    The PLRA requires prisoners to use the administrative process that the state

16  provides but does not require more.  <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir. 2005)

17  (reversing the district court's dismissal of defendants not named in the prisoner's inmate appeal

18  because the form at issue "did not require identification of any specific persons").  "A prison

19  appeal need not name each defendant named in a subsequent federal action as a matter of law."

20  <u>Tillis v. Lamarque</u>, No. C 04-3763 SI, 2006 WL 644876, at *4 (N.D. Cal. Mar. 9, 2006) (finding

21  that the CDC 602 inmate appeal form "does not require anyone to be named").  <u>See</u> also <u>Lewis v.</u>

22  <u>Mitchell</u>, 416 F. Supp. 2d 935, 941-42 (S.D. Cal. 2005) (holding that the CDC 602 inmate appeal

23  form does not require an inmate to name or identify specific persons and adopting the magistrate

24  judge's finding that the inmate sufficiently exhausted administrative remedies as to all

25  defendants even though only two defendants were named in the inmate appeal).

26  /////

1    The undersigned finds that plaintiff exhausted available administrative remedies

2 on his claims against defendants Baker and Qualls in Claim Two when he alleged in Appeal No.

3 01-03113 that all participants in the events of August 23, 2001, subjected him to unnecessary

4 force and cruel and unusual punishment, and pursued the appeal to the director's level.  This

5 finding is consistent with the determination in case No. CIV S-01-1868 that plaintiff exhausted

6 his claims of excessive force by defendants Baker and Qualls in the grievance resolved at the

7 director's level on February 13, 2002.  Defendants' motion to dismiss should be denied as to

8 Claim Two.

9    Claim Three/Defendants Ingwerson, Money, and Peery:  Failure to Supervise

10    Defendants concede that plaintiff exhausted the claims alleged in Claim Three.

11    Claim Four/Defendants Garrison, Money, and Ingwerson:  Denial of Medical Care

12    Defendants concede that plaintiff exhausted claims of deliberate indifference to

13 medical needs as to defendants Money and Ingwerson but contend that plaintiff did not exhaust

14 such claims against defendant Garrison.  Plaintiff argues that he specifically referred to the

15 conduct of MTA Garrison in Appeal No. 01-03113 and exhausted that appeal to the third level.

16    Although plaintiff did not name defendant Garrison in Appeal No. 01-03113, the

17 allegations in the appeal plainly refer to the specific conduct of a specific MTA who was on duty

18 on the date in question.  The relevant portion of the appeal, set forth in full in the discussion of

19 Claim One, supra, is as follows:

20         . . . . I had asked to see the MTA several times and he ignored me
         for 2 hours and when he finally did come to see me I asked him to
21         make a note of the impressions on my left wrist, he looked but I
         did not see him write anything down.  Further I asked Sgt. Mooney
22         in addition to the MTA to see the doctor & for my back and high
         blood pressure meds and they refused.  The MTA was deliberately
23         indifferent to my medical needs . . . .

24 (Def'ts' Mot. to Dismiss, Ex. A, Attach. 4.)

25    In his civil rights complaint, plaintiff alleges that "MTA Garrison was the medical

26 personnel on duty at the time."  (Compl. at 8.)  The inmate appeal form does not require the

18

1   grievant to name staff, and plaintiff's allegations plainly concern the conduct of the MTA on duty

2   on August 23, 2001.  The absence of MTA Garrison's name does not render plaintiff's claim

3   against the MTA unexhausted, and the undersigned finds that plaintiff exhausted available

4   administrative remedies on Claim Four against defendant Garrison.  This finding is consistent

5   with the determination in case No. CIV S-01-1868 that plaintiff exhausted his claim of deliberate

6   indifference to serious medical needs by defendant Garrison in the grievance resolved at the

7   director's level on February 13, 2002.  Defendants' motion to dismiss should be denied as to

8   Claim Four.

9                    Claim Five/Defendant Norlin:  Violation of Rights During Disciplinary Hearing

10                  Defendants found no grievance concerning defendant Norlin's actions on

11  November 20, 2001.  Plaintiff argues that he exhausted his claims against defendant Norlin in

12  Appeal No. 01-03902 and Appeal No. 01-03486.  Although plaintiff asserts that he pursued both

13  of these appeals to the third level, he states that he was unable to find third level responses to

14  these appeals in his prison central file and did not previously file copies of these appeals in this

15  court.  Plaintiff has submitted a copy of Appeal No. 01-03902 and the second level decision on

16  that appeal.  (Pl.'s Opp'n to Def'ts' Mot., Attach. 1 at 17-26)  Plaintiff has also submitted a copy

17  of Appeal No. 01-3486 and the first level decision on that appeal.  (Id., Attach. 1 at 27- 32.)

18                  Appeal No. 01-03486, dated October 25, 2001, is a staff complaint in which

19  plaintiff alleged misconduct by Correctional Officer Dreager, who was initially assigned to serve

20  as investigating employee during disciplinary proceedings on the charge of battery on a peace

21  officer issued by defendant Kissinger against plaintiff on August 23, 2001.  In the appeal,

22  plaintiff requested assignment of a new investigative employee to prepare a new report for the

23  hearing on the pending charge.  (Id., Attach. 1 at 27.)  Plaintiff asserted that Officer Dreager

24  prepared a report that misrepresented what plaintiff told her, failed to interview all the witnesses

25  identified by plaintiff, did not include in her report a statement plaintiff gave her, and in general

26  failed to conduct the investigation as instructed by plaintiff.  (Id., Attach. 1 at 28.)  Plaintiff's

description of the problem and request for action contain no mention of defendant Norlin.  The

appeal was partially granted at the first level on the ground that defendant Norlin had granted

plaintiff's request that a new investigative report be prepared by a different officer.  (Id., Attach.

1 at 27.)  Although plaintiff claims that he pursued this appeal to the director's level, there is no

evidence that he did so or that he pursued the appeal because he was dissatisfied with defendant

Norlin's action.

Appeal No. 3902, dated December 16, 2001, is a challenge to defendant Norlin's

decision that plaintiff was guilty of the lesser included offense of willfully obstructing a peace

officer.  Plaintiff asserted these contentions:

> (1) Where there is no order there can be no resisting.  (2) There is
> no rule or regulation in Title 15 or elsewhere setting forth a length
> of time to take a shower.  It is at the discretion of the inmate,
> therefore, there can be no delaying or obstructing within the
> meaning of Title 15 3323(D)(6).  The findings are overly broad.

(Id., Attach. 1 at 19.)  Plaintiff argued that he was entitled to a not guilty finding on the lesser

included offense.  (Id., Attach. 1 at 22.)  At the second level, the appeal was denied on the

grounds that all due process requirements and procedural safeguards were met, that the reduced

charge was appropriate to the circumstances of the misconduct, and that the preponderance of the

evidence supported the finding of guilt.  (Id., Attach. 1 at 18.)

In his civil rights complaint, plaintiff alleges that defendant Norlin (1) applied a

policy of not calling requested witnesses, (2) failed to appoint a new investigating employee

when it became clear that the assigned employee had not asked the questions requested by

plaintiff and failed to investigate additional witnesses, and (3) punished plaintiff for disobeying

an illegal order and trying to protect himself from further pain and injury.  (Compl. at 21-22.)  In

Appeal No. 01-03486 plaintiff did not present any issue concerning defendant Norlin, and in

Appeal No. 01-03902 he did not present any issue concerning defendant Norlin's decisions

concerning witnesses and investigating employees or any claim that defendant Norlin punished

him for disobeying an illegal order while trying to protect himself from injury.

The undersigned finds that plaintiff failed to exhaust available administrative remedies on his claims against defendant Norlin.  Defendants' motion to dismiss should be granted with regard to Claim Five.

Claim Six/Defendant Runnels:  Policies and Practices Sanctioning Misconduct

Defendants found no grievance concerning misconduct by defendant Runnels.  Plaintiff argues that he exhausted claims against defendant Runnels in Appeal No. 01-02900, which placed the warden "at the center of the controversy" and made him aware of the facts.

Plaintiff is mistaken concerning Appeal No. 01-02900.  A portion of plaintiff's description of the problem and a summary of the remainder of the description are set forth in the discussion of Claim Two, supra.  This appeal concerns the actions of defendant Ingwerson and others on C-yard August 23, 2001, and alleges racist activity on defendant Ingwerson's yard.  Plaintiff described the appeal as a disciplinary action and sought criminal prosecution of the staff accused of racism.  This appeal contains no reference to the warden in the description of the problem or in the request for action.  Plaintiff's statements of dissatisfaction in response to the first and second level decisions contain no reference to defendant Runnels by name or title, and the appeal contains no allegation that can be construed as a claim that defendant Runnels instituted policies and practices that served to condone misconduct by staff at HDSP.

In Appeal No. 01-03113, which is set forth in the discussion of Claim One, supra, plaintiff did mention the warden in his statement of dissatisfaction with the second level decision on the appeal.  Plaintiff stated that he wanted money damages for his injuries and an investigation of racism and "Ku Klux Klan splinter groups runing [sic] lose [sic] up here at High Desert and the Warden is doing nothing about."  (Def'ts' Mot. to Dismiss, Ex. A, Attach. 4.)  The appeal was considered at the director's level as a complaint alleging harassment by custody staff, unnecessary force by staff when they removed him from his cell, and unprofessional and racially motivated actions by staff.  The third-level decision acknowledged plaintiff's requests for an investigation and monetary damages, and denied the appeal on the grounds that (1) plaintiff's

allegations were reviewed and properly evaluated, (2) the documentation and arguments were persuasive that plaintiff had failed to support his appeal with sufficient evidence, (3) no staff misconduct was found, (4) the appeal was appropriately granted in part, and (5) plaintiff's request for monetary damages lacked merit.  (Id.)

In his civil rights complaint, plaintiff cites specific policies and procedures, such as the use of blankets to cover inmates' cell windows, the issuance of rule violation reports for alleged tray slot assaults, and abuse of the inmate appeal process, as examples of ways in which staff cover up violations of prisoners' rights at HDSP.  A single vague allegation of inaction by the warden in a brief statement of dissatisfaction with the second level appeal decision in Appeal No. 01-03113 cannot be construed as a claim that the warden of HDSP instituted any policy and practice, or allowed subordinate staff to institute any policy and practice, designed to cover up misconduct by staff and shield staff from liability for violating prisoners' rights.

The undersigned finds that plaintiff failed to exhaust available administrative remedies on his claim that defendant Runnels instituted and/or condoned policies and practices. Defendants' motion to dismiss should be granted with regard to plaintiff's claims against defendant Runnels in Claim Six.

<u>Claim Seven/Defendants Kissinger, Peery, and Qualls:  Racially Motivated Misconduct</u>

Defendants concede that plaintiff exhausted the claims alleged in Claim Seven against defendant Kissinger, but they deny that plaintiff exhausted such claims against defendants Peery and Qualls.  Plaintiff argues that all claims against defendants Peery and Qualls were exhausted in Appeal No. 01-02900.

In his civil rights complaint, plaintiff alleges in Claim Seven that defendants Kissinger, Peery, and Qualls deprived him of equal protection of the laws and violated federal criminal laws when they subjected him to racially motivated excessive force.  In particular, he alleges that defendants Peery and Qualls lifted his arms up from behind while he was handcuffed, rupturing his back, and that the action was racially motivated.

1        In Appeal No. 01-02900, which is set forth in part and summarized in part in the

2 discussion of Claim Two, supra, plaintiff alleged that defendant Ingwerson condoned racially

3 motivated conduct and supported defendants Peery and other members of her staff in making

4 racial slurs against plaintiff on August 23, 2001.  This appeal did not exhaust the claims alleged

5 against defendants Peery and Qualls in Claim Seven.

6        However, Appeal No. 01-03113, which is set forth in the discussion of Claim

7 One, supra, did exhaust such claims.  The appeal includes the following relevant allegations:

8 defendant Peery used excessive force while handcuffing plaintiff on August 23, 2001; defendant

9 Peery and another officer escorted plaintiff to the program office; during the escort, defendant

10 Peery and the other officer lifted plaintiff's arms up above his head from the back while plaintiff

11 was handcuffed, causing injury to plaintiff's back; defendant Peery and the other officer acted

12 deliberately and maliciously; defendant Peery and other staff were aware of complaints about

13 defendant Kissinger's racism toward black inmates; during the escort, plaintiff complained to

14 defendant Peery and the other officer that defendant Kissinger was engaging in Klan activity and

15 was told "that's the way we do it up here"; the administration supports, condones, and rewards

16 racist practices.  (Def'ts' Mot. to Dismiss, Ex. A, Attach. 4.)  After Appeal No. 01-03113 was

17 partially granted at the first level, plaintiff submitted his appeal to the second level on the

18 grounds that racial discrimination was present at the institution and his rights had been violated.

19 Plaintiff submitted the appeal to the third level, requesting an investigation of racism.  The

20 director's level decision described the appeal as concerning, inter alia, racially motivated actions

21 by staff.

22        The inmate appeal form does not require the grievant to name staff, and plaintiff's

23 allegations concerning racially motivated excessive force in Appeal No. 01-03113 plainly

24 involved defendant Peery and the other officer who escorted plaintiff to the program office on

25 August 23, 2001.  In plaintiff's civil rights complaint, the other officer is identified as defendant

26 Qualls.  The mere absence of defendant Qualls' name from the inmate appeal does not render the

1  claims against him unexhausted when the allegations in the appeal concerned the conduct of a

2  specific officer.  The undersigned therefore finds that plaintiff exhausted available administrative

3  remedies on the claims against defendants Peery and Qualls in Claim Seven.  This finding is

4  consistent with the determination in case No. CIV S-01-1868 that plaintiff exhausted his claims

5  of excessive force against defendants Peery and Qualls in the grievance resolved at the director's

6  level on February 13, 2002.  Defendants' motion to dismiss should be denied as to Claim Seven.

7  <u>Claims Eight - Eleven/Kissinger, Peery, Runnels, and Norlin:  Violations of State Law</u>

8  Defendants found no exhausted grievances concerning the alleged violations of

9  state law.

10  Plaintiff's civil rights complaint alleges state law violations as follows:  Claim

11  Eight, defendant Kissinger committed racially motivated assault and battery, in violation of the

12  California Constitution, state statutes, and state regulations; Claim Nine, defendant Peery

13  committed racially motivated  assault and battery, in violation of the California Constitution,

14  state statutes, and state regulations; Claim Ten, defendant Runnels instituted and approved

15  policies and practices that allow racial intimidation of blacks, in violation of the California

16  Constitution, state statutes, and state regulations; and Claim Eleven, defendant Norlin conducted

17  plaintiff's disciplinary hearing without regard to plaintiff's rights under the California

18  Constitution, state statutes and state regulations.

19  The state law claims contained in Claims Eight and Nine are predicated on the

20  same facts alleged in the inmate appeals that served to exhaust plaintiff's federal claims of

21  excessive force against defendants Kissinger and Peery.  The undersigned finds that plaintiff

22  exhausted administrative remedies on Claims Eight and Nine.

23  The state law claims contained in Claims Ten and Eleven are predicated on the

24  same facts alleged in Claims Five and Six against defendants Norlin and Runnels.  The

25  undersigned has found that plaintiff failed to exhaust Claims Five and Six and consequently finds

26  that plaintiff failed to exhaust Claims Ten and Eleven.

1    Defendants' motion to dismiss should be denied with regard to Claims Eight and

2  Nine, and granted with regard to Claims Ten and Eleven.

3  II.  Defendants' Motion in the Alternative to Stay This Action

4    A district court has the inherent authority to control its own docket and calendar.

5  Yong v. I.N.S., 208 F.3d 1116, 1119 (9th Cir. 2000) (citing Landis v. North American Co., 299

6  U.S. 248, 254-55 (1936)).  The court may find it both efficient and fair to stay an action pending

7  resolution of independent proceedings that bear upon the case.  Id. at 1119-20 (citing Leyva v.

8  Certified Grocers of Cal. Ltd., 593 F.2d 857, 863-64 (9th Cir. 1979)).  In general, the decision to

9  stay proceedings is within the discretion of the district court.  Id. at 1119.  However, the

10  justification for a stay must be greater where the term of the stay is indefinite.  Id.

11    Here, defendants suggest an indefinite stay on the ground that the Supreme Court

12  may soon affirm two unpublished Sixth Circuit cases and thereby overrule current Ninth Circuit

13  authority.  A review of the oral argument heard by the Supreme Court on October 30, 2006,

14  reveals that the Court may not reach the total exhaustion issue in the Sixth Circuit cases.  See

15  Jones v. Bock, 75 USLW 3282, 2006 WL 3085627, at *20-22 (U.S. Oct. 30, 2006) (No. 05-

16  7058).  Moreover, the proposed stay flies in the face of the principle that "[o]nce a federal circuit

17  court issues a decision, the district courts within that circuit are bound to follow it and have no

18  authority to await a ruling by the Supreme Court before applying the circuit court's decision as

19  binding authority."  Id. at 1119 n.2 (citing McClellan v. Young, 421 F.2d 690, 691 (6th Cir.

20  1970)).  For these reasons, the undersigned will recommend that defendants' motion in the

21  alternative to stay this case be denied.

22  III.  Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

23    A.  Standards Applicable to Motions to Dismiss Pursuant to Rule 12(b)(6)

24    A motion brought pursuant to Rule 12(b)(6) is a challenge to the sufficiency of the

25  pleading.  For purposes of ruling on such a motion, the court must take as true the material facts

26  alleged in the complaint.  Hospital Bldg. Co. v. Trustees of Rex Hosp., 425 U.S. 738, 740

1  (1976); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  The court must also construe the

2  complaint in the light most favorable to the plaintiff.  Jenkins, 395 U.S. at 421; Meek v. County

3  of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  Pro se pleadings must be held to a less stringent

4  standard than formal pleadings drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520-21

5  (1972).  See also Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996) (noting that

6  courts must liberally construe a pro se litigant's inartful pleading).  A motion to dismiss for

7  failure to state a claim should not be granted unless it appears beyond doubt that the plaintiff can

8  prove no set of facts in support of his claims which would entitle him to relief.  Hishon v. King

9  & Spalding, 467 U.S. 69, 73 (1984); Palmer v. Roosevelt Lake Log Owners Ass'n, 651 F.2d

10  1289, 1294 (9th Cir. 1981).

11         B.  Discussion

12         Defendants contend that plaintiff's Claim Seven, alleging violations of federal

13  criminal law, and plaintiff's Claims Eight through Eleven, alleging violations of state law, should

14  be dismissed for failure to state a claim upon which relief may be granted as to any defendant.

15         While Claim Seven includes inappropriate allegations concerning violations of

16  federal criminal law and improperly requests relief not available in this civil action, the gravamen

17  of the claim is that the misconduct of defendants Kissinger, Peery, and Qualls violated plaintiff's

18  rights under the Equal Protection Clause.  For this reason, Claim Seven cannot be dismissed for

19  failure to state any claim upon which relief can be granted.

20         Claims Eight and Nine, alleging state law claims of assault and battery against

21  defendants Kissinger and Peery, are grounded on the facts that support plaintiff's federal claims

22  of excessive force and equal protection violations.  Claim Ten, alleging state law violations by

23  defendant Norlin in disciplinary proceedings, and Claim Eleven, alleging state law violations

24  caused by policies and practices instituted by defendant Runnels, are grounded on the facts that

25  support plaintiff's federal claims of equal protection and due process violations.  Claims Eight

26  through Eleven cannot be dismissed for failure to state a claim upon which relief can be granted.

1   Accordingly, IT IS ORDERED that:

2   1.  Defendants' June 14, 2006 motion to strike surreply is granted;

3   2.  The Clerk of the Court is directed to strike plaintiff's reply filed June 12, 2006;

4   IT IS RECOMMENDED that:

5   1.  Defendants' April 28, 2006 motion to dismiss pursuant to non-enumerated

6   Rule 12(b) be granted as to Claims Five, Six, Ten, and Eleven and that defendant's motion be

7   denied in all other respects;

8   2.  Plaintiff's Claims Five and Eleven against defendant Norlin and Claims Six

9   and Ten against defendant Runnels be dismissed without prejudice for failure to exhaust

10  administrative remedies on those claims before bringing this action; and

11  3.  Defendants Kissinger, Baker, Peery, Qualls, Money, Ingwerson, and Garrison

12  be directed to file an answer to plaintiff's complaint.

13  These findings and recommendations will be submitted to the United States

14  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

15  twenty days after being served with these findings and recommendations, any party may file and

16  serve written objections with the court.  A document containing objections should be titled

17  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

18  shall be filed and served within ten days after service of the objections.  The parties are advised

19  that failure to file objections within the specified time may, under certain circumstances, waive

20  the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

21  1991).

22  DATED: January 11, 2007.

23

24  _____

    DALE A. DROZD

25  UNITED STATES MAGISTRATE JUDGE

26  DAD:13
    davi0878.mtd

27