1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES T. DAVIS,

11              Plaintiff,                    No. CIV S-04-0878 GEB DAD P

12       vs.

13   C/O KISSINGER, et al.,

14              Defendants.          <u>FINDINGS AND RECOMMENDATIONS</u>

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  The matter is before the court on plaintiff's motion for partial

18   summary judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.

19   Defendants have filed an opposition to the motion and plaintiff has filed a reply.

20                                   **BACKGROUND**

21              Plaintiff is proceeding on his original complaint.  Therein, he alleges as follows.

22   On August 21, 2001, he and his fellow inmates filed a group appeal alleging that defendant

23   Kissinger improperly targets African American inmates and deliberately attempts to provoke

24   them by searching their cells, using racial slurs against them, and withholding and contaminating

25   their food.  Two days after filing that appeal, defendant Kissinger asked plaintiff and his cellmate

26   if they wished to shower.  Plaintiff responded yes, but asked defendant Kissinger to place his

1

1    handcuffs above a brace plaintiff was wearing on his left wrist.  Plaintiff alleges that as soon as

2    he put his hand through the tray slot, defendant Kissinger grabbed his wrist and began bending it

3    and putting pressure directly on his injury.  When plaintiff pulled his arm back into the cell,

4    defendant Kissinger said he was going to write him up.  Defendant Kissinger then called an

5    extraction team to plaintiff's cell, claiming that plaintiff had assaulted him.  (Compl. 5-6.)

6            When the extraction team arrived, plaintiff presented defendant Peery with an

7    inmate appeal.  Defendant Peery refused to take it and yelled "Put your arms through the tray

8    slot."  Plaintiff asked defendant Peery to place his handcuffs above his wrist brace.  Although

9    defendant Peery placed the cuffs above his brace, he pulled on the cuffs as hard as he could,

10   bending and twisting plaintiff's wrist and applying pressure to his injury.  According to plaintiff,

11   defendants Kissinger, Baker, Qualls, and Money stood by as the incident occurred and took no

12   action.  (Compl. at 6-7.)

13           As defendants Peery and Qualls escorted plaintiff out of the unit for an interview

14   regarding his alleged assault on defendant Kissinger, plaintiff told them that he had back

15   problems.  Plaintiff also told them that defendant Kissinger was a Ku Klux Klansman.  In

16   response, defendants Qualls and Peery jerked plaintiff's arms up and caused plaintiff to suffer

17   immediate back spasms.  (Compl. at 7.)

18           Once plaintiff arrived at the program office he was placed in a cage.  He stopped

19   defendant Ingwerson and told her that he knew that she was aware of the numerous complaints

20   against defendant Kissinger.  As she was responding to him, defendant Money told plaintiff to

21   leave his lieutenant alone and defendant Peery uttered racist comments.  (Compl. at 7-8.)

22           Defendant Garrison was the medical technical assistant on duty that day.

23   Defendant Garrison ignored plaintiff's repeated requests for pain and blood pressure medication.

24   Defendant Garrison also refused to let plaintiff see a doctor and would not come near the cage to

25   observe and make a notation of the indentation on plaintiff's wrist.  The only notation that

26   /////

2

1   defendant Garrison made in the medical report was that plaintiff had difficulty standing in the

2   cage.  (Compl. at 8-9.)

3              Plaintiff was subsequently placed in administrative segregation.  Defendant

4   Kissinger came to his cell and took out his handcuffs stating "Hey Davis, remember these," and

5   began to laugh.  Plaintiff filed an inmate appeal complaining about defendant Kissinger's

6   conduct and asking that prison officials to keep Kissinger away from him.  Plaintiff also asked

7   defendant Peery to recuse himself from responding to the appeal because he had a similar

8   complaint against him, but defendant Peery refused.  (Compl. at 9.)

9              Plaintiff wrote a letter to defendant Runnels about these various incidents, but

10  defendant Runnels responded that he did not believe there was any racism at High Desert State

11  Prison.  Plaintiff also wrote defendant Runnels asking him to remove defendant Peery from

12  hearing his appeal, but defendant Runnels did not respond.  (Compl. at 9.)

13             On August 23, 2001, plaintiff saw Dr. Sandham and told him that he had a long

14  history of back problems and that he had re-injured his left wrist.  Dr. Sandham examined

15  plaintiff and provided him with pain medication to treat his wrist and back pain.  Plaintiff told

16  him that the medication did not help, but Dr. Sandham still ordered the medication for him.

17  (Compl. at 10-11.)

18             On November 20, 2001, plaintiff appeared for his rules violation hearing.

19  Plaintiff alleges that the investigative employee report was incomplete and that defendant Norlin,

20  the senior hearing officer, told him that if he pled guilty he would reduce the violation down to

21  an administrative rules violation and plaintiff would most likely be released to the general

22  population.  According to plaintiff, when he refused to plead guilty defendant Norlin denied

23  plaintiff's requests for witnesses and a new investigative employee and found plaintiff guilty of

24  the lesser included offense.  (Compl. at 10-12.)

25             On November 30, 2001, plaintiff was released from administrative segregation

26  and submitted a medical request to see a doctor.  On December 27, 2001, he saw Dr. Rohlfing

3

who diagnosed him as suffering from a left wrist sprain and lower-back aggravation and referred him for casting of his left wrist and physical therapy for his wrist and back.  (Compl. at 13.)

Plaintiff has raised the following eleven claims for relief in his complaint:

**Claim One:**  Defendant Kissinger engaged in racial intimidation that led to a group appeal against him on August 21, 2001, after he deliberately provoked black inmates by (1) searching their cells while they were on lockdown status, just days after a previous search, (2) using racial slurs, and (3) routinely withholding food or spitting in inmates' food before delivering it; defendant Kissinger used excessive force on August 23, 2001, when he pulled plaintiff's arm through the food tray slot in the cell door while handcuffing him and deliberately put pressure on plaintiff's injured wrist, in violation of plaintiff's Eighth Amendment rights;

**Claim Two:**  Excessive force was used by defendants Baker, Peery, Qualls, and Money during a cell extraction on August 23, 2001, after defendant Kissinger falsely claimed that plaintiff had assaulted him, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

**Claim Three:**  Defendants Ingwerson, Money, and Peery failed to properly supervise their subordinates during the cell extraction on August 23, 2001, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

**Claim Four:**  After plaintiff was removed from his cell on August 23, 2001, he was placed in a holding cage where defendants Garrison (a Medical Technical Assistant), Money, and Ingwerson denied plaintiff his medications for pain and high blood pressure, and defendant Garrison refused to examine plaintiff or allow plaintiff to see a doctor, in deliberate indifference to plaintiff's serious medical needs and in violation of plaintiff's Eighth Amendment rights;

**Claim Five:**  At a disciplinary hearing conducted by defendant Norlin, the defendant denied plaintiff all requested witnesses and found plaintiff guilty of a lesser included offense, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

**Claim Six:**  Defendant Runnels instituted policies and practices that condoned misconduct and constitutional violations by subordinates, in violation of plaintiff's Eighth and Fourteenth Amendment rights;

**Claim Seven:**  Defendants Kissinger, Peery, and Qualls deprived plaintiff of equal protection of the laws and violated federal criminal laws when they subjected plaintiff to racially-motivated excessive force;

**Claims Eight through Eleven:**  Defendants Kissinger, Peery, Runnels, and Norlin violated plaintiff's rights under the California Constitution, state regulations, and state statutes.

(Compl. at 14-32.)

/////

1

## PROCEDURAL HISTORY

2          On January 18, 2006, the court ordered the United States Marshal to serve

3   plaintiff's complaint on defendants Baker, Ingwerson, Garrison, Money, Norlin, Peery, Qualls,

4   and Runnels.  On April 28, 2006, defendants moved to dismiss the entire action or, in the

5   alternative, selected claims pursuant to non-enumerated Rule 12(b) and to dismiss other selected

6   claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

7          On July 13, 2006, the undersigned issued findings and recommendations,

8   recommending that defendants' motion to dismiss pursuant to non-enumerated Rule 12(b) be

9   granted as to plaintiff's fifth, sixth, tenth, and eleventh claims; that plaintiff's fifth and eleventh

10  claims against defendant Norlin and plaintiff's sixth and tenth claims against defendant Runnels

11  be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies on

12  those claims before bringing this action; and that defendants Kissinger, Baker, Peery, Qualls,

13  Money, Ingwerson, and Garrison be directed to file an answer to plaintiff's complaint.  On March

14  13, 2007, the assigned district judge adopted the findings and recommendations in full.  On the

15  same day, defendants Kissinger, Baker, Peery, Qualls, Money, Ingwerson, and Garrison filed an

16  answer, and on March 22, 2007, the undersigned issued a discovery order.  On June 2, 2008,

17  plaintiff filed the instant motion for partial summary judgment, arguing that he is entitled to relief

18  on his excessive force and state law claims.

19

## SUMMARY JUDGMENT STANDARDS UNDER RULE 56

20          Summary judgment is appropriate when it is demonstrated that there exists "no

21  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

22  matter of law."  Fed. R. Civ. P. 56(c).

23          Under summary judgment practice, the moving party
           always bears the initial responsibility of informing the district court
24         of the basis for its motion, and identifying those portions of "the
           pleadings, depositions, answers to interrogatories, and admissions
25         on file, together with the affidavits, if any," which it believes
           demonstrate the absence of a genuine issue of material fact.

26  /////

5

1   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

2   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

3   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

4   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

5   after adequate time for discovery and upon motion, against a party who fails to make a showing

6   sufficient to establish the existence of an element essential to that party's case, and on which that

7   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

8   concerning an essential element of the nonmoving party's case necessarily renders all other facts

9   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

10  whatever is before the district court demonstrates that the standard for entry of summary

11  judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

12          If the moving party meets its initial responsibility, the burden then shifts to the

13  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

14  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

15  establish the existence of this factual dispute, the opposing party may not rely upon the

16  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

17  form of affidavits, and/or admissible discovery material, in support of its contention that the

18  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

19  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

21  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

22  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

23  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

24  1436 (9th Cir. 1987).

25          In the endeavor to establish the existence of a factual dispute, the opposing party

26  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

1   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

2   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

3   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

4   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

5   committee's note on 1963 amendments).

6         In resolving the summary judgment motion, the court examines the pleadings,

7   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

8   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

9   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

10   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

11   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

12   produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

13   Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

14   1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

15   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

16   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

17   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

18              **OTHER APPLICABLE LEGAL STANDARDS**

19   I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

20         The Civil Rights Act under which this action was filed provides as follows:

21         Every person who, under color of [state law] . . . subjects, or causes
            to be subjected, any citizen of the United States . . . to the

22         deprivation of any rights, privileges, or immunities secured by the
            Constitution . . . shall be liable to the party injured in an action at

23         law, suit in equity, or other proper proceeding for redress.

24   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

25   actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

26   Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

1 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the

2 meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

3 omits to perform an act which he is legally required to do that causes the deprivation of which

4 complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

5         Moreover, supervisory personnel are generally not liable under § 1983 for the

6 actions of their employees under a theory of respondeat superior and, therefore, when a named

7 defendant holds a supervisorial position, the causal link between him and the claimed

8 constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

9 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

10 allegations concerning the involvement of official personnel in civil rights violations are not

11 sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

12 II.  Eighth Amendment and Excessive Force

13         The Eighth Amendment prohibits the infliction of "cruel and unusual

14 punishments."  U.S. Const. amend. VIII.  It is well established that the "unnecessary and wanton

15 infliction of pain" constitutes cruel and unusual punishment prohibited by the United States

16 Constitution.  Whitley v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430

17 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor

18 negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not

19 inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and

20 Unusual Punishments Clause."  Whitley, 475 U.S. at 319.

21         What is needed to show unnecessary and wanton infliction of pain "varies

22 according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.

23 1, 5 (1992) (citing Whitley, 475 U.S. at 320).  The plaintiff must show that objectively he

24 suffered a sufficiently serious deprivation and that subjectively each defendant had a culpable

25 state of mind in allowing or causing the plaintiff's deprivation to occur.  Wilson v. Seiter, 501

26 U.S. 294, 298-99 (1991).

1    "The objective component of an Eighth Amendment claim is . . . contextual and

2    responsive to 'contemporary standards of decency.'"  Hudson, 503 U.S. at 8 (quoting Estelle, 429

3    U.S. at 103).  The objective prong of the test requires the court to consider whether the alleged

4    wrongdoing was harmful enough to establish a constitutional violation.  Hudson, 503 U.S. at 8;

5    Wilson, 501 U.S. at 298.  In the context of an excessive use of force claim, however, the

6    objective prong does not require a prisoner to show a "significant injury" in order to establish

7    that he suffered a sufficiently serious constitutional deprivation.  Hudson, 503 U.S. at 9-10.

8    The subjective prong of the two-part test is also contextual.  Wilson, 501 U.S. at

9    299.  A prison official acts with the requisite "culpable mind" with respect to an excessive use of

10   force claim if he acts maliciously and sadistically for the purpose of causing harm.  Whitley, 475

11   U.S. at 320-21.  "[W]henever prison officials stand accused of using excessive physical force in

12   violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in

13   Whitley, i.e., whether force was applied in a good-faith effort to maintain or restore discipline, or

14   maliciously and sadistically to cause harm."  Hudson, 503 U.S. at 6-7.

15   III.  Civil Rights Claim Under State Law

16   Plaintiff has alleged that the defendants violated his civil rights protected under

17   two separate statutory provisions of California law.  He has now moved for summary judgment

18   in his favor on both of those claims.  Below, the court will address them in turn.

19   Under California law, the Bane Civil Rights Act provides:

20   (a) If a person or persons, whether or not acting under color of law,
     interferes by threat, intimidation, or coercion, or attempts to
21   interfere by threats, intimidation, or coercion, with the exercise or
     enjoyment by any individual or individuals of rights secured by the
22   Constitution or laws of the United States, or of the rights secured
     by the Constitution or laws of this state, the Attorney General, or
23   any district attorney or city attorney may bring a civil action for
     injunctive and other appropriate equitable relief in the name of the
24   people of the State of California, in order to protect the peaceable
     exercise or enjoyment of the right or rights secured. . . .
25
     (b) Any individual whose exercise or enjoyment of rights secured
26   by the Constitution or laws of the United States, or of rights

9

secured by the Constitution or laws of this state, has been
interfered with, or attempted to be interfered with, as described in
subdivision (a), may institute and prosecute in his or her own name
and on his or her own behalf a civil action for damages, including,
but not limited to, damages under Section 52, injunctive
relief, and other appropriate equitable relief to protect the
peaceable exercise or enjoyment of the right or rights
secured.

Cal. Civ. Code § 52.1(a) & (b).

There are four elements to a claim brought pursuant to the Bane Act: (1) the

defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory

right; (2) the plaintiff reasonably believed that if he exercised his constitutional right the

defendant would commit violence against him, or the defendant injured plaintiff to prevent him

from exercising his constitutional right; (3) the plaintiff was harmed; and (4) the defendant's

conduct was a substantial factor in causing the plaintiff's harm.  See Austin B. v. Escondido

Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) ("The word 'interferes' as used in the Bane

Act means 'violates.'"); Stamps v. Superior Court, 136 Cal. App. 4th 1441, 1448 (2006) (Bane

Civil Rights Act is intended to supplement Ralph Civil Rights Act and to allow an individual to

seek relief to prevent violence before it occurs).

Under the Bane Civil Right Act, the plaintiff need not show that the defendant

acted with discriminatory intent.  It is enough that the defendant interfered with plaintiff's

constitutional rights with threats, intimidation, or coercion.  See Venegas v. County of Los

Angeles, 32 Cal. 4th 820, 841 (2004).  See also Jones v. Kmart Corp., 17 Cal. 4th 329, 334

(1998) ("The Legislature enacted section 52.1 to stem a tide of hate crimes").

Under California law, the Ralph Civil Rights Act of 1976 provides:

All persons within the jurisdiction of this state have the right to be
free from any violence, or intimidation by threat of violence,
committed against their persons or property because of political
affiliation, or on account of [sex, race, color, religion, ancestry,
national origin, disability, medical condition, marital status, or
sexual orientation], or position in a labor dispute, or because
another person perceives them to have one or more of those

10

1    characteristics.  The identification in this subdivision of particular
     bases of discrimination is illustrative rather than restrictive.
2

3  Cal. Civ. Code § 51.7(a).

4          There are four elements to a claim brought pursuant to the Ralph Civil Rights Act:

5  (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was

6  motivated by his perception of plaintiff's sex, race, color, religion, ancestry, national origin,

7  disability, medical condition, marital status, or sexual orientation; (3) the plaintiff was harmed;

8  and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  See

9  Austin B., 149 Cal. App. 4th at 880-81; Stamps, 39 Cal. App. 4th at 1446 (Ralph Civil Rights

10  Act was intended to provide all persons with the right to be free from violence or threat of

11  violence because of race, color religion, ancestry, national origin, political affiliation, or position

12  in a labor dispute).

13  IV.  California Tort Law

14          Plaintiff has also alleged a cause of action under California Civil Code § 43 and

15  now moves for summary judgment in his favor on that claim.

16          California Civil Code § 43 provides:

17          Besides the personal rights mentioned or recognized in the
            Government Code, every person has, subject to the qualifications
18          and restrictions provided by law, the right of protection from
            bodily restraint or harm, from personal insult, from defamation,
19          and from injury to his personal relations.

20          This provision codifies causes of action for assault, battery, and invasion of

21  privacy.  See Marsh v. San Diego County, 432 F. Supp. 2d 1035, 1057-58 (S.D. Cal. 2006).

22  Thus, under California Civil Code § 43, an individual has a "right to be free from physical attack

23  or the threat thereof."  People v. Lashley, 1 Cal. App. 4th 938, 951 (1991).  See also Edson v.

24  City of Anaheim, 63 Cal. App. 4th 1269, 1272-73 (1998) (plaintiff must prove unreasonable

25  force in a battery action against a police officer).

26  /////

1    V.  Qualified Immunity

2           As will be addressed in more detail below, defendants argue, in part, that

3    plaintiff's motion for summary judgment should be denied because they are entitled to qualified

4    immunity in this case.

5           "Government officials enjoy qualified immunity from civil damages unless their

6    conduct violates 'clearly established statutory or constitutional rights of which a reasonable

7    person would have known.'"  Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

8    Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

9    immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

10   the light most favorable to the plaintiff, demonstrate that the defendants' conduct violated a

11   statutory or constitutional right and (2) whether the right at issue was "clearly established."

12   Saucier v. Katz, 533 U.S. 194, 201 (2001).  Although the court was previously required to

13   answer these questions in order, the U.S. Supreme Court has very recently held that "while the

14   sequence set forth there is often appropriate, it should no longer be regarded as mandatory."

15   Pearson v. Callahan, __ U.S. __, __ S. Ct. __, 2009 WL 128768 at *9 (Jan. 21, 2009).  In this

16   regard, if a court decides that plaintiff's allegations do not make out a statutory or constitutional

17   violation, "there is no necessity for further inquiries concerning qualified immunity."  Saucier,

18   533 U.S. at 201.  Likewise, if a court determines that the right at issue was not clearly established

19   at the time of the defendant's alleged misconduct, the court may end further inquiries concerning

20   qualified immunity at that point without determining whether the allegations in fact make out a

21   statutory or constitutional violation.  Pearson v. Callahan, __ U.S. __, __ S. Ct. __, 2009 WL

22   128768 at * 9 (Jan. 21, 2009).

23          In deciding whether the plaintiff's rights were clearly established, "[t]he proper

24   inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was

25   unlawful in the situation he confronted' . . . or whether the state of the law in [at the relevant

26   time] gave 'fair warning' to the officials that their conduct was unconstitutional."  Clement v.

1   <u>Gomez</u>, 298 F.3d 898, 906 (9th Cir. 2002) (quoting <u>Saucier</u>, 533 U.S. at 202).  The inquiry must

2   be undertaken in light of the specific context of the case.  <u>Saucier</u>, 533 U.S. at 201.  Because

3   qualified immunity is an affirmative defense, the burden of proof initially lies with the official

4   asserting the defense.  <u>Harlow</u>, 457 U.S. at 812; <u>Houghton v. South</u>, 965 F.2d 1532, 1536 (9th

5   Cir. 1992); <u>Benigni v. City of Hemet</u>, 879 F.2d 473, 479 (9th Cir. 1989).

6                    **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

7   I.  <u>Plaintiff's Arguments</u>

8            Plaintiff argues that he is entitled to summary judgment on his excessive force

9   claims against defendants Kissinger, Baker, Qualls, Money, and Peery because, he asserts, the

10  evidence in the case establishes that there was no need for the use of force here.  Plaintiff argues

11  that the facts in the instant case satisfies both the objective and subjective prongs of an Eighth

12  Amendment claim.  Plaintiff first argues that he satisfies the objective prong of the standard

13  because he suffered a serious injury to his wrist and back as a result of defendants' alleged

14  conduct, causing him to suffer substantial pain for an extended period of time.[1]  Second, plaintiff

15  argues that he satisfies the subjective prong of the requirements for an Eighth Amendment claim

16  because defendants acted with a wanton state of mind.  For example, plaintiff argues that he

17  asked defendant Kissinger to accommodate his wrist injury when he handcuffed him, but

18  defendant Kissinger refused to do so and went out of his way to grab plaintiff's wrist while

19  defendant Baker stood by and allowed Kissinger to do so.  Similarly, plaintiff explains that he

20  asked defendant Peery to provide the same accommodation for his wrist, but defendant Peery

21  twisted and bent plaintiff's wrist as defendants Kissinger, Baker, Qualls and Money stood by and

22  watched.  (Pl.'s Mot. for Summ. J. at 4-20.)

23

24          [1] Plaintiff has submitted his own declaration stating that, between August 23, 2001 and
    December 2, 2002, he was unable to use his left hand without substantial pain and was unable to
    sleep because anytime he rolled over on his wrist he would be awakened by the pain.  Plaintiff

25  notes that he had a cast on his wrist and when doctors removed it in December 2002, his wrist
    immediately swelled.  Plaintiff also declares that his back was causing him pain because the

26  prescribed medication doctors gave him was not effective.

1           Plaintiff also argues that he is entitled to summary judgment on his state law

2    claims.  Specifically, plaintiff argues that California Civil Code § 43 and Article I, § 17 of the

3    California Constitution prohibited the excessive use of force by defendants Kissinger, Peery, and

4    Qualls and barred defendants Baker, Money and Qualls from standing by and failing to stop the

5    other defendants from breaking his wrist.  In addition, plaintiff argues that under California Civil

6    Code § 52.1, he only needs to show that defendants intimidated him, and under California Civil

7    Code § 57.1, he only needs to show that defendants intimidated him based on a disability in order

8    to establish liability.  Finally, plaintiff appears to argue that the defendants' conduct violated

9    California Government Code § 815.6 and a number of other cited state regulations, including

10   California Code of Regulations Title 15, §§ 3268(a)(2) & (3), 3268.1(a)(1), and 3268.2(b)(3).

11   (Pl.'s Mot. for Summ. J. at 4, 20-27.)

12   II.  <u>Defendants' Arguments</u>

13          In opposition to plaintiff's motion for summary judgment defendants have

14   submitted a separate statement of disputed material facts supported by their own declarations,

15   declarations from other correctional officers who witnessed the events in question, excerpts from

16   plaintiff's deposition, prison incident reports and rules violation reports that were issued in

17   connection with this incident involving plaintiff.  (See Doc. No. 140.)  Based upon this evidence,

18   defense counsel argues that genuine issues of material fact exist as to plaintiff's Eighth

19   Amendment excessive force claims.  Specifically, in his declaration defendant Kissinger denies

20   that he bent plaintiff's wrist "extremely hard" or that he "placed extreme pressure on a tendon in

21   Plaintiff's left wrist."  (Defs.' Separate Statement of Disputed Material Facts (DSSDMF) filed

22   Oct. 9, 2008, Ex. A at 2.)  Defendant Kissinger also declares that in applying the restraints on

23   plaintiff, he placed the handcuffs below an "ACE" type bandage on plaintiff's wrist and did not

24   place the handcuffs above the bandage as plaintiff requested because he could not properly

25   secure the handcuffs in that fashion.  (<u>Id.</u>)  According to defendant Kissinger, as he attempted to

26   place handcuffs on plaintiff's left wrist, he held plaintiff's wrist with his right hand and plaintiff

1    lunged forward, pulling defendant Kissinger's right hand and wrist through the food port,

2    injuring defendant Kissinger himself.  (Id.; see also DSSDMF, Ex. B; Defs.' Opp'n to Pl.'s Mot.

3    for Summ. J. at 8-9.)

4           Similarly, defendant Peery has submitted a declaration denying that he bent or

5    twisted plaintiff's arm, placed pressure with his thumbs on a tendon in plaintiff's left arm or used

6    "the cuffs like a weapon" against plaintiff.  (DSSDMF, Ex. B at 2.)  In responding to defendant

7    Kissinger's call reporting that plaintiff had assaulted him, defendant Peery states that he

8    requested plaintiff to place his hands through the food port and that plaintiff eventually complied.

9    (Id.)  Counsel on behalf of defendant Peery argues that under these facts, any force Peery used

10   was necessary to secure plaintiff so that he could be escorted to the program office for an

11   interview concerning his assault on defendant Kissinger.  (Defs.' Opp'n to Pl.'s Mot. for Summ.

12   J. at 9; DSSDMF, Exs. A-E.)

13          Defendants Peery and Qualls also deny that they raised plaintiff's hands up from

14   behind to cause him to stumble forward or that they applied unnecessary force as they escorted

15   plaintiff from his cell to the program office.  (DSSDMF, Exs. C & E.)  Rather, according to

16   defendant Peery, during the escort plaintiff was walking in an uncooperative manner, alternating

17   big steps, little steps, and side steps.  (Id., Ex. C at 2.)  Defendant Peery believed that plaintiff

18   walked in this manner to gain the attention of other inmates.  (Id.)

19          Finally, defendants Baker, Qualls, and Money deny that they witnessed defendants

20   Kissinger or Peery apply wanton or unnecessary force in restraining plaintiff.  (DSSDMF, Exs. B,

21   D & E.)  In addition, defendants Kissinger, Baker, Qualls, and Money deny witnessing defendant

22   Peery apply unnecessary force in restraining plaintiff.  (Id., Exs. A, B, D & E.)  Finally,

23   defendants Baker and Money deny using any force themselves during the incident involving

24   plaintiff.  (Id., Exs. B & D.)

25          Counsel on behalf of the defendants also argues that genuine issues of material

26   fact exist as to plaintiff's state law claims precluding the granting of summary judgment in

1  plaintiff's favor as to those claims.  Specifically, each of the defendants have submitted

2  declarations denying that they committed acts of violence or intimidation against plaintiff.

3  (DSSDMF, Exs. A, B, C, D & E.)   Defendants Kissinger, Qualls, and Peery maintain that they

4  did not handcuff plaintiff because he is an African American or because he was wearing an ACE

5  bandage.  (Id., Exs. A, C & E.)  The defendants also deny themselves making or witnessing any

6  other correctional officer make any racial or discriminatory remarks directed at plaintiff.  (Id.,

7  Exs. A-E.)

8          Similarly, all of the defendants deny committing or witnessing any acts of

9  violence or intimidation against plaintiff that could constitute violations of the Ralph Act or

10  California Civil Code § 43.  (Id., Exs. A-E.)  They also each deny harming plaintiff when they

11  handcuffed and escorted him to the program office.  (Id.)

12          Finally, counsel briefly argues that defendants are entitled to qualified immunity.

13  In this regard, counsel contends that even if the defendants were found to have used excessive

14  force in handcuffing and escorting plaintiff to the program office or to have violated plaintiff's

15  rights under state law, plaintiff has failed to present any evidence that there was at the time any

16  law clearly establishing that inmates must be handcuffed above an ACE bandage as he requested.

17  In absence of such evidence, defense counsel argues, plaintiff cannot defeat defendants' claim of

18  entitlement to qualified immunity.  (Defs.' Opp'n to Pl.'s Mot. for Summ. J. at 12.)[2]

19  III.  Plaintiff's Reply

20          In reply, plaintiff argues that the defendants have attempted to categorize his

21  serious injury as de minimis to negate his Eighth Amendment claim.  However, he contends that

22

---

23          [2] Defense counsel also argues that many of the documents plaintiff relies upon in support

24  his statement of undisputed facts lack authentication, foundation, or constitute hearsay or
    improper medical opinions.  In addition, counsel argues that many of plaintiff's contentions in
    his statement of undisputed facts constitute argument rather than evidence.  (Defs.' Opp'n to

25  Pl.'s Mot. for Summ. J. at 5-8.)  Although the undersigned acknowledges these objections to the
    evidence offered by plaintiff, the court need not address those objections in light of the

26  recommendation herein that plaintiff's motion for summary judgment be denied.

1   the defendants have not submitted any expert testimony in support of their position and have

2   failed to controvert the undisputed facts that plaintiff sought and received treatment for the injury

3   defendants caused him.  Plaintiff argues that the declarations submitted by defendants, which he

4   characterizes as boilerplate, are insufficient to defeat his motion for summary judgment on his

5   Eighth Amendment claim.  In plaintiff's opinion, the fact that it took five officers to escort him

6   to the shower demonstrates that the force used was not necessary.  (Pl.'s Reply at 3-14.)

7            In addition, plaintiff argues that under the Bane Civil Rights Act, the Ralph Civil

8   Rights Act, and California Civil Code § 43, he need only show that defendants intimidated him.

9   According to plaintiff, his own perception of what constitutes intimidating conduct is the proper

10  legal standard to be applied.  Plaintiff also argues that in order to demonstrate discriminatory

11  intent he need only show that defendants perceived he had a disability and targeted him as a

12  result thereof.  He claims that he has done so.  Plaintiff also argues that because the defendants

13  cannot defeat his excessive force claim under the Eighth Amendment, they cannot defeat his state

14  law claims of assault and unnecessary force.  According to plaintiff where, as here, there was no

15  need for force any use of force is objectively unreasonable.  (Pl.'s Reply at 14-16.)

16           Finally, plaintiff argues that qualified immunity protects officers except when they

17  are plainly incompetent or when they knowingly violate the law.  Here, plaintiff argues, it is well

18  established that handcuffing a prisoner too tight constitutes excessive and unreasonable force and

19  that defendants are therefore not entitled to qualified immunity.  (Pl.'s Reply at 21.)

**ANALYSIS**

21  I.  Plaintiff's Excessive Force Claims

22           Based upon the evidence and arguments presented to the court in connection with

23  the pending motion it is clear that the parties in this case agree on very little.  In considering

24  plaintiff's motion for summary judgment, the court is required to believe defendants' evidence

25  and draw all reasonable inferences from the facts before the court in defendants' favor.  Here, the

26  court finds that the evidence presented by defendants in opposition to plaintiff's motion for

1   summary judgment establishes that triable issues of material fact exist.  Based upon that evidence

2   a reasonable jury could conclude that defendants' actions did not violate the Eighth Amendment.

3   In this regard, defendants Kissinger, Peery, Baker, Money and Qualls have submitted detailed

4   declarations, signed under penalty of perjury, disputing nearly every aspect of plaintiff's version

5   of events.  See DSSDMF, Exs. A, B, C, D & E.  Defendants' sworn statements regarding the

6   events that took place on August 23, 2001, if believed, are sufficient to defeat plaintiff's claim

7   that excessive force was used against him.  See Hudson, 503 U.S. at 9 (not every malevolent

8   touch by a prison guard gives rise to a federal cause of action).  Accordingly, plaintiff is not

9   entitled to summary judgment in his favor on his excessive use of force claims.[3]

10  II.  Plaintiff's State Law Claims

11          Plaintiff's state law claims are premised on the same fact allegations as his

12  excessive use of force claims.  Again, the court finds that the evidence presented by defendants in

13  opposition to plaintiff's motion for summary judgment establishes that triable issues of material

14  fact exist as to plaintiff's claims under state law.  Based upon that evidence, a reasonable jury

15  could conclude that defendants' actions did not violate any of the state law provisions cited by

16  plaintiff.  All of the defendants have declared that they have never intimidated, used or

17  threatened the use of violence, or made any discriminatory remarks against plaintiff.  See

18  DSSDMF, Exs. A, B, C, D & E.  In addition, the defendants have all declared that they have

19

20          [3]   The Ninth Circuit has repeatedly cautioned lower courts to take care in deciding cases
21  involving excessive use of force claims at the summary judgment stage.  In this regard, that court
    has explained that:

22          Because [the excessive force inquiry] nearly always requires a jury
23          to sift through disputed factual contentions, and to draw inferences
            therefrom, we have held on many occasions that summary
24          judgment or judgment as a matter of law in excessive force cases
            should be granted sparingly.

25  Santos v. Gates, 287 F.3d 846, 853 (9th Cir. 2002).  See also Smith v. City of Hemet, 394 F.3d
26  689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).  This
    case is no different.

1  never witnessed other correctional staff intimidate, use or threaten the use of violence, or make

2  any discriminatory remarks against plaintiff.  (Id.)  Again, defendants' sworn statements

3  regarding the events that took place on August 23, 2001, if believed, are sufficient to defeat

4  plaintiff's state law claims.  See, e.g., Kincaid v. City of Fresno, No. CIV F-06-1445, 2008 WL

5  2038390 at *15-16 (E.D. Cal. May 12, 2008) (denying plaintiff's motion for summary judgment

6  on a Bane Civil Rights Act claim because defendants "raised substantial disputed issues of

7  material fact" regarding their alleged interference with plaintiff's right to possess property).  Cf.

8  Cole v. Doe 1 Thru Doe 2 Officers, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005) (denying

9  defendants' motion for summary judgment on Bane Act claims because "[u]se of law

10  enforcement authority to effectuate a stop, detention (including use of handcuffs), and search can

11  constitute interference by 'threat[], intimidation, or coercion' if the officer lacks probable cause

12  to initiate the stop, maintain the detention, and continue a search."); Spears v. City & County of

13  San Francisco, No. C 06-4968 VRW, 2008 WL 2812022 at *13-14 (N.D. Cal. July 21, 2008)

14  (denying Sheriff Deputy's motion for summary judgment on former female inmate's Bane Civil

15  Rights Act claim because the plaintiff offered ample evidence that the deputy interfered with her

16  right to be free from sexual assault; Bates v. Arata, No. C 05-3383 SI, 2008 WL 820578 at *26-

17  27 (N.D. Cal. Mar. 26, 2008) ("The only Bane Act claims that survive summary judgment are the

18  excessive force claims. . . .").  Accordingly, plaintiff is not entitled to summary judgment in his

19  favor on his state law claims.[4]

20

21      [4]  Plaintiff also argues that he is entitled to summary judgment and damages on his
   excessive force claims under the California Constitution.  Cal. Const. art. I, § 17.  Plaintiff is
22  advised that there is no private cause of action for damages under the state cruel and unusual
   punishment clause.  See Giraldo v. Cal. Dep't Corrs. & Rehab., 168 Cal. App. 4th 231, 253-56
23  (2008) ("there is no basis to recognize a claim for damages under article 1, section 17 of the
   California Constitution.").  In addition, plaintiff claims that he is entitled to summary judgment
24  under California Government Code § 815.6.  Plaintiff is advised that § 815.6 applies to public
   entities and is therefore inapplicable to this action.  Finally, plaintiff claims that he is entitled to
25  summary judgment on his claims under California Code of Regulations Title 15, §§ 3268(a)(2) &
   (3) (defining unnecessary force and excessive force), 3268.1(a)(1) (reporting non-deadly force),
26  and 3268.2(b)(3) (use of mechanical restraints).  Plaintiff is advised that § 1983 provides a cause
   of action only for violations of the U.S. Constitution and federal laws.  See Sweaney v. Ada

III.  Qualified Immunity

          As noted above, the parties in this case agree on very little.  In asserting that they
are entitled to qualified immunity with respect to plaintiff's claims, defendants bear the burden of
proof on the issue and must produce sufficient evidence to require the plaintiff to go beyond his
pleadings and, in the summary judgment context, must demonstrate the absence of a genuine
issue of material fact.  Moreno v. Baca, 431 F.3d 633, 638 (9th Cir. 2005).  Viewing plaintiff's
allegations and evidence in the light most favorable to him as is required, plaintiff's version of
the events would demonstrate that defendants violated his rights under the Eighth Amendment.
Moreover, the state of the law at the time of the alleged incident clearly would have given
defendants fair warning that their alleged use of excessive force on plaintiff was unconstitutional.
As the United States Supreme Court has recognized:

> [G]eneral statements of the law are not inherently incapable of
> giving fair and clear warning, and in other instances a general
> constitutional rule already identified in the decisional law may
> apply with obvious clarity to the specific conduct in question, even
> though "the very action in question has [not] previously been held
> unlawful."

United States v. Lanier, 520 U.S. 259, 271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635,
640 (1987)).  In this regard, it was well established by 2001 that "whenever prison officials stand
accused of using excessive physical force in violation of the Cruel and Unusual Punishments
Clause, the core judicial inquiry is that set out in Whitley, i.e., whether force was applied in a
good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
Hudson, 503 U.S. at 6-7.  Here, defendants were on notice that they could not intentionally use
their handcuffs to re-injure plaintiff's left wrist or jerk plaintiff's arms up while handcuffed to

County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997).  "To the extent that the violation of a state
law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by
the federal Constitution, Section 1983 offers no redress."  Id.  Indeed, there is not a single
reported state or federal case permitting an independent cause of action pursuant to these
regulations.  Accordingly, these state law claims should be dismissed with prejudice.

1  aggravate his back problems.  Accordingly, defendants are not entitled to relief with respect to

2  their affirmative defense of qualified immunity.[5]

3  **CONCLUSION**

4  For the reasons discussed above, IT IS HEREBY RECOMMENDED that:

5  1.  Plaintiff's June 2, 2008 motion for summary judgment (Doc. No 118) be

6  denied; and

7  2.  Plaintiff's state law claims under the California Constitution Article I, Section

8  17, California Government Code § 815.6, and California Code of Regulations Title 15, §§

9  3268(a)(2) & (3), 3268.1(a)(1), and 3268.2(b)(3) be dismissed with prejudice.

10  These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen

12  days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within ten days after service of the objections.  The parties are advised

16  that failure to file objections within the specified time may waive the right to appeal the District

17  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

18  DATED: February 3, 2009.

19

20

21  DAD:9
   davi0878.57

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

22

23  _____

   [5]  To the extent that counsel has argued that defendants are entitled to qualified immunity
24  from plaintiff's state law claims, the argument fails.  Counsel has not provided the court with any
   authority in support of the application of qualified immunity to state civil rights statutes.  In fact,
   the California Court of Appeal has specifically rejected such an argument with respect to state
25  law claims under the Bane Civil Rights Act.  See Venegas v. County of Los Angeles, 153 Cal.
   App. 4th 1230, 1246 (2007) ("we hold qualified immunity of the kind applied to actions brought
26  under 42 United States Code section 1983 does not apply to actions brought under section 52.1").