1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CHARLES T. DAVIS,

11              Plaintiff,                    No. CIV S-04-0878 GEB DAD P

12        vs.

13   C/O KISSINGER, et al.,                   ORDER AND

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  The matter is before the court on defendants' motion summary

18   judgment brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff has filed

19   an opposition to the motion, and defendants have filed a reply.

20                                    **BACKGROUND**

21              Plaintiff is proceeding on his original complaint.  Therein, he alleges as follows.

22   On August 21, 2001, he and his fellow inmates filed a group appeal alleging that defendant

23   Kissinger improperly targets African American inmates and deliberately attempts to provoke

24   them by searching their cells, using racial slurs against them, and withholding and contaminating

25   their food.  Two days after filing that appeal, defendant Kissinger asked plaintiff and his cellmate

26   if they wished to shower.  Plaintiff responded yes but asked defendant Kissinger to place his

                                          1

1   handcuffs above a brace plaintiff was wearing on his left wrist.  Plaintiff alleges that as soon as

2   he put his hand through the tray slot for cuffing, defendant Kissinger grabbed his wrist and began

3   bending it and putting pressure directly on his injury.  When plaintiff pulled his arm back into the

4   cell, defendant Kissinger said he was going to write him up.  Defendant Kissinger then called an

5   extraction team to plaintiff's cell and claimed that plaintiff had assaulted him.  (Compl. 5-6.)

6          When the extraction team arrived, plaintiff presented defendant Peery with an

7   inmate appeal.  Defendant Peery refused to take it and yelled at him to put his arms through the

8   tray slot.  Plaintiff asked defendant Peery to place his handcuffs above his wrist brace.  Although

9   defendant Peery placed the cuffs above plaintiff's brace, he pulled on the cuffs as hard as he

10  could, bending and twisting plaintiff's wrist and applying pressure to his injury.  According to

11  plaintiff, defendants Kissinger, Baker, Qualls, and Money stood by as the incident occurred and

12  took no action.  (Compl. at 6-7.)

13         As defendants Peery and Qualls escorted plaintiff to the program office for an

14  interview regarding his alleged assault on defendant Kissinger, plaintiff told them that he had

15  back problems.  Plaintiff also told them that defendant Kissinger was a Ku Klux Klansman.  In

16  response, defendants Qualls and Peery jerked plaintiff's arms up and caused plaintiff to suffer

17  immediate back spasms.  (Compl. at 7.)

18         Once plaintiff arrived at the program office he was placed in a holding cell.  He

19  stopped defendant Ingwerson and told her that he knew that she was aware of the numerous

20  complaints against defendant Kissinger.  As she was responding to him, defendant Money told

21  plaintiff to leave his lieutenant alone.  Defendant Peery also passed by plaintiff's cell and uttered

22  racist comments towards him.  (Compl. at 7-8.)

23         Defendant Garrison was the medical technical assistant on duty that day.

24  According to plaintiff, defendant Garrison ignored his repeated requests for his pain and blood

25  pressure medication.  Defendant Garrison also refused to let plaintiff see a doctor and would not

26  come near the cage to observe and make a notation of the indentation on plaintiff's wrist.  The

2

1  only notation that defendant Garrison made in the medical report was that plaintiff had difficulty

2  standing in the cell.  (Compl. at 8-9.)

3         Plaintiff subsequently was transferred to administrative segregation.  Defendant

4  Kissinger came to his cell and took out his handcuffs stating "Hey Davis, remember these," and

5  began to laugh.  Plaintiff filed an inmate appeal complaining about defendant Kissinger's

6  conduct and asking that prison officials keep Kissinger away from him.  Plaintiff also asked

7  defendant Peery to recuse himself from responding to the appeal because he had a similar

8  complaint against him, but defendant Peery refused.  (Compl. at 9.)

9         Plaintiff wrote a letter to defendant Runnels about these various incidents, but

10 defendant Runnels responded that he did not believe there was any racism at High Desert State

11 Prison.  Plaintiff also wrote defendant Runnels asking him to remove defendant Peery from

12 hearing his appeal, but defendant Runnels did not respond.  (Compl. at 9.)

13        On August 24, 2001, plaintiff saw Dr. Sandham and told him that he had a long

14 history of back problems and that he had re-injured his left wrist.  Dr. Sandham examined

15 plaintiff and provided him with pain medication to treat his wrist and back pain.  Plaintiff told

16 him that the medication did not help, but Dr. Sandham still ordered the medication for him.

17 (Compl. at 10-11.)

18        On November 20, 2001, plaintiff appeared for his rules violation hearing.

19 Plaintiff alleges that the investigative employee report was incomplete and that defendant Norlin,

20 the senior hearing officer, told him that if he pled guilty he would reduce the violation down to

21 an administrative rules violation and plaintiff would most likely be released to the general

22 population.  According to plaintiff, when he refused to plead guilty, defendant Norlin denied

23 plaintiff's requests for witnesses and a new investigative employee and found plaintiff guilty of

24 the lesser included offense.  (Compl. at 10-12.)

25        On November 30, 2001, plaintiff was released from administrative segregation

26 and submitted a medical request to see a doctor.  On December 27, 2001, he saw Dr. Rohlfing

1   who diagnosed him as suffering from a left wrist sprain and lower-back aggravation and referred

2   him for casting of his left wrist and physical therapy for his wrist and back.  (Compl. at 13.)

3           Plaintiff raised the following eleven claims for relief in his complaint:

4   **Claim One:**  Defendant Kissinger engaged in racial intimidation that led to a
group appeal against him on August 21, 2001, after he deliberately provoked
5   black inmates by (1) searching their cells while they were on lockdown status, just
days after a previous search, (2) using racial slurs, and (3) routinely withholding
6   food or spitting in inmates' food before delivering it; defendant Kissinger used
excessive force on August 23, 2001, when he pulled plaintiff's arm through the
7   food tray slot in the cell door while handcuffing him and deliberately put pressure
on plaintiff's injured wrist, in violation of plaintiff's Eighth Amendment rights;

8
**Claim Two:**  Excessive force was used by defendants Baker, Peery, Qualls, and
9   Money during a cell extraction on August 23, 2001, after defendant Kissinger
falsely claimed that plaintiff had assaulted him, in violation of plaintiff's Eighth
10   and Fourteenth Amendment rights;

11   **Claim Three:**  Defendants Ingwerson, Money, and Peery failed to properly
supervise their subordinates during the cell extraction on August 23, 2001, in
12   violation of plaintiff's Eighth and Fourteenth Amendment rights;

13   **Claim Four:**  After plaintiff was removed from his cell on August 23, 2001, he
was placed in a holding cage where defendants Garrison (a Medical Technical
14   Assistant), Money, and Ingwerson denied plaintiff his medications for pain and
high blood pressure, and defendant Garrison refused to examine plaintiff or allow
15   plaintiff to see a doctor, in deliberate indifference to plaintiff's serious medical
needs and in violation of plaintiff's Eighth Amendment rights;

16
**Claim Five:**  At a disciplinary hearing conducted by defendant Norlin, the
17   defendant denied plaintiff all requested witnesses and found plaintiff guilty of a
lesser included offense, in violation of plaintiff's Eighth and Fourteenth
18   Amendment rights;

19   **Claim Six:**  Defendant Runnels instituted policies and practices that condoned
misconduct and constitutional violations by subordinates, in violation of
20   plaintiff's Eighth and Fourteenth Amendment rights;

21   **Claim Seven:**  Defendants Kissinger, Peery, and Qualls deprived plaintiff of
equal protection of the laws and violated federal criminal laws when they
22   subjected plaintiff to racially-motivated excessive force;

23   **Claims Eight through Eleven:**  Defendants Kissinger, Peery, Runnels, and
Norlin violated plaintiff's rights under the California Constitution, state
24   regulations, and state statutes.

25   (Compl. at 14-32.)

26   /////

4

## PROCEDURAL HISTORY

On January 18, 2006, the court ordered the United States Marshal to serve plaintiff's complaint on defendants Baker, Ingwerson, Garrison, Money, Norlin, Peery, Qualls, and Runnels.  On April 28, 2006, defendants moved to dismiss the entire action or, in the alternative, selected claims pursuant to non-enumerated Rule 12(b) and to dismiss other selected claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On July 13, 2006, the undersigned issued findings and recommendations, recommending that defendants' non-enumerated Rule 12(b) motion to dismiss be granted as to plaintiff's fifth, sixth, tenth, and eleventh claims; that plaintiff's fifth and eleventh claims against defendant Norlin and plaintiff's sixth and tenth claims against defendant Runnels be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies before bringing this action with respect to those claims; and that defendants Kissinger, Baker, Peery, Qualls, Money, Ingwerson, and Garrison be directed to file an answer to plaintiff's complaint.  On March 13, 2007, the assigned district judge adopted those findings and recommendations in full.  On the same day, defendants Kissinger, Baker, Peery, Qualls, Money, Ingwerson, and Garrison filed an answer, and on March 22, 2007, the undersigned issued a discovery order.

On June 2, 2008, plaintiff filed a motion for partial summary judgment, arguing that he was entitled to judgment in his favor on his excessive force and state law claims.  On February 3, 2009, the undersigned issued findings and recommendations, recommending that plaintiff's motion be denied because based upon the evidence presented to the court a reasonable jury could conclude that defendants' actions did not violate the Eighth Amendment, the Bane Civil Rights Act, the Ralph Civil Rights Act, or California tort law.  The court also explained that plaintiff had no private cause of action for damages under the California Constitution's Cruel and Unusual Punishment Clause and that he failed to state a cognizable claim under the California Government Code and the California Code of Regulations.  On March 10, 2009, the /////

1   assigned district judge adopted the findings and recommendations in their entirety and dismissed

2   plaintiff's latter state law claims with prejudice.

3           On October 9, 2008, defendants filed the instant motion for summary judgment,

4   arguing that defendants Baker and Money did not fail to protect plaintiff, defendants Ingwerson,

5   Money, and Peery did not fail to supervise their subordinates, defendants Garrison, Money, and

6   Ingwerson did not fail to provide plaintiff with adequate medical care, none of the defendants

7   deprived plaintiff of equal protection under the law, defendants Kissinger and Peery did not

8   commit racially-motivated assault and battery in violation of either the Bane Civil Rights Act or

9   the Ralph Civil Rights Act, and that all of the defendants are entitled to qualified immunity.

10                  **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

11          Summary judgment is appropriate when it is demonstrated that there exists "no

12  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

13  matter of law."  Fed. R. Civ. P. 56(c).

14              Under summary judgment practice, the moving party
               always bears the initial responsibility of informing the district court
15             of the basis for its motion, and identifying those portions of "the
               pleadings, depositions, answers to interrogatories, and admissions
16             on file, together with the affidavits, if any," which it believes
               demonstrate the absence of a genuine issue of material fact.

17

18  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

19  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

20  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

21  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

22  after adequate time for discovery and upon motion, against a party who fails to make a showing

23  sufficient to establish the existence of an element essential to that party's case, and on which that

24  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

25  concerning an essential element of the nonmoving party's case necessarily renders all other facts

26  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

                                          6

1   whatever is before the district court demonstrates that the standard for entry of summary

2   judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

3         If the moving party meets its initial responsibility, the burden then shifts to the

4   opposing party to establish that a genuine issue as to any material fact actually does exist. See

5   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to

6   establish the existence of this factual dispute, the opposing party may not rely upon the

7   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

8   form of affidavits, and/or admissible discovery material, in support of its contention that the

9   dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

10   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

11   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

12   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

13   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

14   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

15   1436 (9th Cir. 1987).

16         In the endeavor to establish the existence of a factual dispute, the opposing party

17   need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

18   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

19   versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary

20   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

21   genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

22   committee's note on 1963 amendments).

23         In resolving the summary judgment motion, the court examines the pleadings,

24   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

25   any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

26   477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

1  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

2  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

4  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

5  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

6  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

7  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

8  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

10  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

11        The Civil Rights Act under which this action was filed provides as follows:

12        Every person who, under color of [state law] . . . subjects, or causes
          to be subjected, any citizen of the United States . . . to the
13        deprivation of any rights, privileges, or immunities secured by the
          Constitution . . . shall be liable to the party injured in an action at
14        law, suit in equity, or other proper proceeding for redress.

15  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

16  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

17  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

18  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

19  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

20  omits to perform an act which he is legally required to do that causes the deprivation of which

21  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

22        Moreover, supervisory personnel are generally not liable under § 1983 for the

23  actions of their employees under a theory of respondeat superior and, therefore, when a named

24  defendant holds a supervisorial position, the causal link between him and the claimed

25  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

26  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

1   allegations concerning the involvement of official personnel in civil rights violations are not

2   sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

3   II.   Eighth Amendment and Excessive Force, Failure to Protect, and Inadequate Medical Care

4          The Eighth Amendment prohibits the infliction of "cruel and unusual

5   punishments."  U.S. Const. amend. VIII.  The "unnecessary and wanton infliction of pain"

6   constitutes cruel and unusual punishment prohibited by the United States Constitution.  Whitley

7   v. Albers, 475 U.S. 312, 319 (1986).  See also Ingraham v. Wright, 430 U.S. 651, 670 (1977);

8   Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  Neither accident nor negligence constitutes cruel

9   and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good

10  faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."

11  Whitley, 475 U.S. at 319.

12          What is needed to show unnecessary and wanton infliction of pain "varies

13  according to the nature of the alleged constitutional violation."  Hudson v. McMillian, 503 U.S.

14  1, 5 (1992) (citing Whitley, 475 U.S. at 320).  To prevail on an Eighth Amendment claim the

15  plaintiff must show that objectively he suffered a "sufficiently serious" deprivation.  Farmer, 511

16  U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).  The plaintiff must also show that

17  subjectively each defendant had a culpable state of mind in allowing or causing the plaintiff's

18  deprivation to occur.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

19          It is well established that "whenever prison officials stand accused of using

20  excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core

21  judicial inquiry is that set out in Whitley, i.e., whether force was applied in a good-faith effort to

22  maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson, 503 U.S.

23  at 6-7.  A prisoner is not required to show a "significant injury" to establish that he suffered a

24  sufficiently serious constitutional deprivation.  Hudson, 503 U.S. at 9-10.

25          It is also well established that "prison officials have a duty . . . to protect prisoners

26  from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833.  "Being violently

9

1  assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offense

2  against society.'" Id. at 834.  Prison officials do not, however, incur constitutional liability for

3  every injury suffered by a prisoner at the hands of another prisoner.  Id.  A prison official violates

4  the Eighth Amendment "only if he knows that inmates face a substantial risk of serious harm and

5  disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

6          Finally, it is well established that "deliberate indifference to serious medical needs

7  of prisoners constitutes 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104;

8  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991), overruled on other grounds by WMX

9  Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).  In general, deliberate

10  indifference may be shown when prison officials deny, delay, or intentionally interfere with

11  medical treatment, or may be shown by the way in which prison officials provide medical care.

12  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a

13  prisoner's civil rights have been abridged with regard to medical care, however, "the indifference

14  to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical

15  malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d

16  458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

17  III.  Fourteenth Amendment and Equal Protection

18          The Equal Protection Clause "is essentially a direction that all persons similarly

19  situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S.

20  432, 439 (1985).  "Prisoners are protected under the Equal Protection Clause of the Fourteenth

21  Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539,

22  556 (1974).  To state a viable claim under the Equal Protection Clause, however, a prisoner

23  "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an

24  inference of discriminatory intent." Byrd v. Maricopa County Sheriff's Dep't, 565 F.3d 1205,

25  1212 (9th Cir. 2009) (quoting Monteiro v. Tempe Union High School District, 158 F.3d 1022,

26  1026 (9th Cir. 1998)).  "Intentional discrimination means that a defendant acted at least in part

1  *because of* a plaintiff's protected status." Serrano v. Francis, 345 F.3d 1071 (9th Cir. 2003)

2  (quoting Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994)).

3  IV.  State Civil Rights Law

4           California's Bane Civil Rights Act provides:

5           (a) If a person or persons, whether or not acting under color of law,
            interferes by threat, intimidation, or coercion, or attempts to
6           interfere by threats, intimidation, or coercion, with the exercise or
            enjoyment by any individual or individuals of rights secured by the
7           Constitution or laws of the United States, or of the rights secured
            by the Constitution or laws of this state, the Attorney General, or
8           any district attorney or city attorney may bring a civil action for
            injunctive and other appropriate equitable relief in the name of the
9           people of the State of California, in order to protect the peaceable
            exercise or enjoyment of the right or rights secured. . . .
10
            (b) Any individual whose exercise or enjoyment of rights secured
11          by the Constitution or laws of the United States, or of rights
            secured by the Constitution or laws of this state, has been
12          interfered with, or attempted to be interfered with, as described in
            subdivision (a), may institute and prosecute in his or her own name
13          and on his or her own behalf a civil action for damages, including,
            but not limited to, damages under Section 52, injunctive
14          relief, and other appropriate equitable relief to protect the
            peaceable exercise or enjoyment of the right or rights
15          secured.

16  Cal. Civ. Code § 52.1(a) & (b).

17           There are four elements to a claim brought pursuant to the Bane Act: (1) the

18  defendant interfered with or attempted to interfere with plaintiff's constitutional or statutory

19  right; (2) the plaintiff reasonably believed that if he exercised his constitutional right the

20  defendant would commit violence against him, or the defendant injured plaintiff to prevent him

21  from exercising his constitutional right; (3) the plaintiff was harmed; and (4) the defendant's

22  conduct was a substantial factor in causing the plaintiff's harm.  See Austin B. v. Escondido

23  Union Sch. Dist., 149 Cal. App. 4th 860, 883 (2007) ("The word 'interferes' as used in the Bane

24  Act means 'violates.'"); Stamps v. Superior Court, 136 Cal. App. 4th 1441, 1448 (2006) (the

25  Bane Civil Rights Act is intended to supplement Ralph Civil Rights Act and to allow an

26  individual to seek relief to prevent violence before it occurs).

1       Under the Bane Civil Right Act, the plaintiff need not show that the defendant

2   acted with discriminatory intent.  It is enough that the defendant interfered with plaintiff's

3   constitutional rights with threats, intimidation, or coercion.  See Venegas v. County of Los

4   Angeles, 32 Cal. 4th 820, 841 (2004).  See also Jones v. Kmart Corp., 17 Cal. 4th 329, 334

5   (1998) ("The Legislature enacted section 52.1 to stem a tide of hate crimes").

6       California's Ralph Civil Rights Act of 1976 provides:

7       All persons within the jurisdiction of this state have the right to be
        free from any violence, or intimidation by threat of violence,
8       committed against their persons or property because of political
        affiliation, or on account of [sex, race, color, religion, ancestry,
9       national origin, disability, medical condition, marital status, or
        sexual orientation], or position in a labor dispute, or because
10      another person perceives them to have one or more of those
        characteristics.  The identification in this subdivision of particular
11      bases of discrimination is illustrative rather than restrictive.

12  Cal. Civ. Code § 51.7(a).

13      There are four elements to a claim brought pursuant to the Ralph Civil Rights Act:

14  (1) the defendant threatened or committed violent acts against the plaintiff; (2) the defendant was

15  motivated by his perception of plaintiff's sex, race, color, religion, ancestry, national origin,

16  disability, medical condition, marital status, or sexual orientation; (3) the plaintiff was harmed;

17  and (4) the defendant's conduct was a substantial factor in causing the plaintiff's harm.  See

18  Austin B., 149 Cal. App. 4th at 880-81; Stamps, 39 Cal. App. 4th at 1446 (the Ralph Civil Rights

19  Act was intended to provide all persons with the right to be free from violence or threat of

20  violence because of race, color religion, ancestry, national origin, political affiliation, or position

21  in a labor dispute).

22  V.  California Tort Law

23      California Civil Code § 43 provides:

24      Besides the personal rights mentioned or recognized in the
        Government Code, every person has, subject to the qualifications
25      and restrictions provided by law, the right of protection from
        bodily restraint or harm, from personal insult, from defamation,
26      and from injury to his personal relations.

12

1        This provision codifies causes of action for assault, battery, and invasion of

2   privacy.  <u>See</u> <u>Marsh v. San Diego County</u>, 432 F. Supp. 2d 1035, 1057-58 (S.D. Cal. 2006).

3   Under California Civil Code § 43, an individual has a "right to be free from physical attack or the

4   threat thereof."  <u>People v. Lashley</u>, 1 Cal. App. 4th 938, 951 (1991).  <u>See</u> <u>also</u> <u>Edson v. City of</u>

5   <u>Anaheim</u>, 63 Cal. App. 4th 1269, 1272-73 (1998) (a plaintiff must prove unreasonable force in a

6   battery action against a police officer).

7   VI.  <u>Qualified Immunity</u>

8        "Government officials enjoy qualified immunity from civil damages unless their

9   conduct violates 'clearly established statutory or constitutional rights of which a reasonable

10   person would have known.'"  <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001) (quoting

11   <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  When a court is presented with a qualified

12   immunity defense, the central questions for the court are (1) whether the facts alleged, taken in

13   the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a

14   statutory or constitutional right and (2) whether the right at issue was "clearly established."

15   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).

16        Although the court was once required to answer these questions in order, the

17   United States Supreme Court has recently held that "while the sequence set forth there is often

18   appropriate, it should no longer be regarded as mandatory."  <u>Pearson v. Callahan</u>, ___ U.S. ___,

19   ___, 129 S. Ct. 808, 818 (2009).  In this regard, if a court decides that plaintiff's allegations do

20   not make out a statutory or constitutional violation, "there is no necessity for further inquiries

21   concerning qualified immunity."  <u>Saucier</u>, 533 U.S. at 201.  Likewise, if a court determines that

22   the right at issue was not clearly established at the time of the defendant's alleged misconduct,

23   the court may end further inquiries concerning qualified immunity at that point without

24   determining whether the allegations in fact make out a statutory or constitutional violation.

25   <u>Pearson</u>, 129 S. Ct. at 818-21.

26   /////

13

1    In deciding whether the plaintiff's rights were clearly established, "[t]he proper

2    inquiry focuses on whether 'it would be clear to a reasonable officer that his conduct was

3    unlawful in the situation he confronted' . . . or whether the state of the law [at the relevant time]

4    gave 'fair warning' to the officials that their conduct was unconstitutional." Clement v. Gomez,

5    298 F.3d 898, 906 (9th Cir. 2002) (quoting Saucier, 533 U.S. at 202).  The inquiry must be

6    undertaken in light of the specific context of the case.  Saucier, 533 U.S. at 201.  Because

7    qualified immunity is an affirmative defense, the burden of proof initially lies with the official

8    asserting the defense.  Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th

9    Cir. 1992); Benigni v. City of Hemet, 879 F.2d 473, 479 (9th Cir. 1989).

10              **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

11   I. Defendants' Statement of Undisputed Facts and Evidence

12          Defendants' statement of undisputed facts is supported by citations to declarations

13   under penalty of perjury by defendants Kissinger, Baker, Peery, Qualls, Money, Ingwerson, and

14   Garrison as well as by citations to a declaration by High Desert State Prison ("HDSP") Chief

15   Medical Officer Swingle. Defendants' motion is also supported by citations to plaintiff's

16   deposition transcript.

17          The evidence submitted by the defendants establishes the following.  On August

18   23, 2001, plaintiff was incarcerated at HDSP in Building Five.  At all relevant times, all of the

19   defendants were employees of the California Department of Corrections and Rehabilitation and

20   worked at HDSP.  On August 23, 2001, Building Five was on lock down.  When a building is on

21   lock down status, correctional staff place inmates who want to shower in restraints and escort

22   them to the showers.  At approximately 1525 hours, defendants Kissinger and Baker went to cell

23   120.  Defendant Kissinger asked plaintiff and his cellmate, inmate Hardaway, if they wanted to

24   shower.  Both inmates responded yes.  (Defs.' SUDF 1-7 & Exs. E-G, Pl.'s Dep.)

25          Inmate Hardaway went to the cell door, placed his back to the door, and placed his

26   arms through the food port one at a time.  Defendant Kissinger secured the handcuffs on each of

1  inmate Hardaway's arms and then told plaintiff to approach the cell door.  Plaintiff approached

2  the cell door and placed his back to the door.  Defendants Kissinger and Baker noticed that

3  plaintiff was wearing an "ACE" type bandage on his left wrist.  Plaintiff asked if defendant

4  Kissinger could secure the handcuffs above the bandage.  Defendant Kissinger told plaintiff that

5  he had to fasten the handcuffs below the bandage to insure that they remained secure on his wrist.

6  Plaintiff placed his left hand through the port.  Holding plaintiff's left hand with his right hand,

7  defendant Kissinger applied the handcuffs to plaintiff's left wrist.  Defendant Baker did not see

8  defendant Kissinger bend plaintiff's left wrist extremely hard or place extreme pressure on a

9  tendon in plaintiff's left wrist.  Plaintiff could not see defendant Baker while defendant Kissinger

10  applied the handcuffs to him.  (Defs.' SUDF 8-15 & Exs. A, B, Pl.'s Dep.)

11           Plaintiff lurched forward and pulled his left arm back through the food port.

12  Defendant Kissinger continued to hold plaintiff's left arm with his right hand.  Defendant

13  Kissinger's hand was scratched by the top of the food port.  Defendant Kissinger released

14  plaintiff's arm and went to call his sergeant.  Plaintiff began yelling as defendants Kissinger and

15  Baker left the cell.  Defendant Kissinger spoke to defendant Peery and told him that plaintiff had

16  forced his right arm through the food port when he attempted to apply handcuffs to plaintiff's left

17  wrist.  (Defs.' SUDF 16-20 & Exs. A, B.)

18           At approximately 1535 hours, defendants Peery, Money, and Qualls went to

19  plaintiff's cell to investigate the reported staff assault.  After speaking with defendant Kissinger,

20  defendant Peery instructed plaintiff to place his arms, in sequence, through the food port so that

21  he could apply the hand restraints.  Plaintiff placed his back against the cell door and placed his

22  left arm through the food port.  Defendant Peery secured the handcuffs on his left arm.

23  Defendant Peery then ordered plaintiff to place his right arm through the food port.  He issued the

24  same order three times.  On the third order, plaintiff put his right arm through the food port, and

25  defendant Peery secured the handcuffs on him.  During this time, none of the defendants heard

26  plaintiff scream or yell in pain.  Nor did they witness defendant Peery bend or twist plaintiff's

15

arm, put pressure with his thumbs on a tendon in plaintiff's left arm, or "use the cuffs like a weapon." Plaintiff could not see the other defendants while defendant Peery applied the handcuffs to him. (Defs.' SUDF 21-29 & Exs. A-E, Pl.'s Dep.)

The control tower opened plaintiff's cell door. Defendants Qualls and Peery escorted plaintiff to the program office and placed him in holding cell number 1. After a short time, defendant Ingwerson walked by the cell. Plaintiff told defendant Ingwerson that he believed defendant Kissinger was a racist. Plaintiff heard defendant Ingwerson respond that "when you people get together. . . ." During their conversation, defendant Money walked by and said "leave my lieutenant alone, all your people are liars anyway." Plaintiff responded to defendant Money that "this is an A and B conversation, why don't you see your way out." (Defs.' SUDF 30-37 & Exs. A-F, Pl.'s Dep.)

Defendant Garrison, a medical technical assistant, entered the program office and examined plaintiff. Plaintiff asked defendant Garrison to retrieve the prescription medications (Motrin and Baclofen) he had in his cell. Defendant Garrison did not retrieve these medications because plaintiff did not have an immediate need for them. Defendant Garrison then cleared plaintiff for placement in administrative segregation. Defendant Garrison also examined defendant Kissinger for injuries on the same day. (Defs.' SUDF 38-40 & Exs. G, H, Pl.'s Dep.)

The defendants in this action are not and have never been members of the Ku Klux Klan. Defendants have also never witnessed any correctional staff intimidate, use, or threaten the use of force, or make any racial remarks towards plaintiff. (Defs.' SUDF 41-42 & Exs. A-G.)

II.  Defendants' Arguments

Defense counsel argues that the defendants are entitled to summary judgment in their favor on each of plaintiff's claims for the following reasons. First, counsel argues that

/////

/////

16

defendants Baker and Money did not fail to protect plaintiff from a risk of serious harm.[1] Specifically, defense counsel contends that defendant Baker did not fail to protect plaintiff when defendant Kissinger attempted to apply handcuffs to plaintiff because defendant Baker did not witness defendant Kissinger bend plaintiff's wrist or place extreme pressure on a tendon in plaintiff's wrist.  Moreover, even if these acts did take place and constituted the excessive use of force, defense counsel argues that plaintiff could not and does not know what defendant Baker did or what defendant Baker saw while defendant Kissinger attempted to apply the handcuffs to him because the evidence establishes that plaintiff's back was to the cell door.  Similarly, counsel contends that defendants Baker and Money did not fail to protect plaintiff when defendant Peery applied the handcuffs because they did not witness plaintiff scream in pain as defendant Peery allegedly twisted his arm.  Moreover, even if these acts did take place and constituted the excessive use of force, counsel argues that plaintiff does not know what defendants Baker and Money did or what they saw while defendant Peery applied the handcuffs because, again, the evidence establishes that plaintiff's back was to the cell door.  (Defs.' Mem. of P. & A. at 6-7.)

Second, defense counsel argues that plaintiff has failed to assert any specific, cognizable supervisory claims against defendants Ingwerson, Money, and Peery, aside from his claim that defendants Kissinger and Peery used excessive force in applying restraints while under their supervision.  Counsel contends, however, that there is no evidence of a causal connection between defendants Ingwerson, Money, and Peery and the alleged acts of their subordinates. According to counsel, the evidence reflects that none of these defendants observed any use of excessive force against plaintiff.  (Defs.' Mem. of P. & A. at 8.)

/////

_____

[1]  In Claim Two of plaintiff's complaint, he alleges that defendants Baker, Peery, Qualls and Money used excessive force against him during a cell extraction.  At his deposition, however, plaintiff clarified that his "excessive force" claims against defendants Baker and Money stem from their alleged failure to protect him from the alleged excessive use of force by defendants Kissinger and Peery.

1        Third, defense counsel argues that defendants Garrison, Ingwerson, and Money

2  were not deliberately indifferent to plaintiff's medical needs.  In this regard, defense counsel

3  acknowledges that plaintiff has alleged that defendant Garrison failed to retrieve his medication

4  for him while he was in the program office.  However, counsel notes that while plaintiff alleges

5  that defendant Garrison's inaction placed him at risk of being "killed" because he is African

6  American, plaintiff has provided no evidence to support this assertion.  Nor, according to

7  counsel, does plaintiff provide any evidence that defendant Garrison's failure to retrieve

8  plaintiff's high blood pressure medication caused plaintiff actual harm.  Moreover, counsel

9  contends that plaintiff's mere allegation that defendants Ingwerson and Money "aided and

10  abetted" defendant Garrison does not establish deliberate indifference on their part.  In fact,

11  according to counsel, plaintiff has provided no evidence that either defendants Ingwerson or

12  Money deliberately ignored plaintiff's serious medical needs in any respect.  (Defs.' Mem. of P.

13  & A. at 8-9.)

14        Fourth, defense counsel argues that the none of defendants' alleged conduct

15  denied plaintiff equal protection under the law.  Specifically, counsel contends that the alleged

16  verbal harassment or abuse is not sufficient to state a constitutional violation, so that any racial

17  references defendants allegedly directed at plaintiff are not actionable.  In addition, counsel

18  contends that there is no evidence that defendants' alleged treatment of plaintiff on August 23,

19  2001, was due to plaintiff being African-American.  Nor, according to defense counsel, is there

20  any evidence that defendants intended to discriminate against plaintiff because of his race.

21  Finally, counsel notes that contrary to plaintiff's unfounded allegations, there is no evidence

22  before the court that any of the defendants are members of the Ku Klux Klan.  (Defs.' Mem. of P.

23  & A. at 9-12.)

24        Fifth, defense counsel argues that the evidence establishes that defendants

25  Kissinger and Peery did not commit racially-motivated assault and battery against plaintiff in

26  violation of the Bane and Ralph Civil Rights Acts.  Plaintiff alleges that defendant Kissinger and

1  Peery's application of handcuffs to him constitutes violence and intimidation, and that they

2  restrained him based on his African American race and his wearing of an "ACE" bandage.

3  However, defense counsel contends that there is no evidence that defendants restrained plaintiff

4  on account of his race or because he was wearing an "ACE" bandage.  (Defs.' Mem. of P. & A.

5  at 12-13.)

6          Finally, defense counsel argues that the defendants are entitled to qualified

7  immunity.  In this regard, and for many of the same reasons discussed above, defense counsel

8  maintains that there is no evidence that defendants violated any of plaintiff's constitutional

9  rights.  (Defs.' Mem. of P. & A. at 13-16.)

10  III.  Plaintiff's Opposition

11          Plaintiff's opposition to defendants' motion for summary judgment is supported

12  by a statement of undisputed facts and numerous exhibits attached thereto, including excerpts

13  from plaintiff's deposition and copies of plaintiff's medical records.[2]  In his opposition, plaintiff

14  argues as follows.

15          As to defendant Kissinger, plaintiff argues that Kissinger disregarded a substantial

16  risk to plaintiff's health and safety by applying handcuffs in a manner that would cause plaintiff

17  undue discomfort.  In addition, plaintiff argues that defendant Kissinger intentionally

18  discriminated against him when he applied that excessive force.  Plaintiff contends that defendant

19  Kissinger's racial animus towards him is evidenced by his repeated verbal harassment and abuse

20  of plaintiff.  Plaintiff also notes that other African American inmates have filed complaints

21  against defendant Kissinger for similar acts of racial intimidation.  Even his cellmate warned

22  plaintiff when they first met "You'd better watch out for Hitler," referring to defendant

23  Kissinger.  (Pl.'s SUDF 1 & Attach. 1, Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 5-11.)

24

25          [2]  Notwithstanding the length of plaintiff's opposition, his arguments often fail to squarely
    address those of defense counsel.  Instead, plaintiff offers independent arguments as to the merits
26  of each his claims.

1        As to defendant Baker, plaintiff argues that Baker worked in concert with

2  defendant Kissinger to violate his Eighth Amendment rights.  Plaintiff contends that Baker saw

3  defendant Kissinger's conduct, but nevertheless submitted a "fraudulent report" to the rules

4  violation hearing officer thereby obstructing justice.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at

5  16.)

6        As to defendants Peery and Qualls, plaintiff argues that defendant Peery

7  aggravated plaintiff's wrist injury when he applied handcuffs to him, and that defendants Peery

8  and Qualls aggravated plaintiff's back problems when they lifted his arms above his head while

9  he was in handcuffs.  At the time, plaintiff contends that he was trying to explain to those

10  defendants that defendant Kissinger was a racist.  According to plaintiff, however, defendants

11  Peery and Qualls simultaneously responded "That's the way we do it around here."  Plaintiff

12  contends that he needed medical treatment, including physical therapy, as a direct result of this

13  application of excessive force.  Plaintiff also argues that he objected to defendant Peery

14  processing his inmate appeal about defendant Kissinger's ongoing racial intimidation.

15  Nonetheless, defendant Peery reviewed plaintiff's inmate appeal as defendant Kissinger's

16  supervisor.  In this regard, plaintiff argues that defendant Peery was aware of his ongoing

17  complaints regarding defendant Kissinger and that it is not credible for defendant Peery to

18  contend that he had no knowledge of inmate complaints about defendant Kissinger.  (Pl.'s SUDF

19  3, 9 & Attachs. 1, 3, Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 18-19 & 21-22.)

20        As to defendant Money, plaintiff argues that Money is a sergeant and directly

21  supervises defendant Kissinger.  Plaintiff notes that defendant Money was also present when

22  defendant Peery tried to break plaintiff's wrist in the cell door tray slot but now claims that the

23  incident never happened.  Likewise, plaintiff argues that defendant Ingwerson is a lieutenant who

24  supervises defendants Peery, Money, and Qualls.  According to plaintiff, defendant Ingwerson

25  stood by and did nothing as defendants Peery and Money directed racial slurs at him.  Plaintiff

26  also contends that defendant Ingwerson knew of defendant Kissinger's history of racial targeting

1   and "aided and abetted" defendants Peery, Money, Qualls, Baker, and Garrison when she

2   authorized plaintiff's placement in administrative segregation.  (Pl.'s Opp'n to Defs.' Mot. for

3   Summ. J. at 23-26.)

4          As to defendants Garrison, Money, and Ingwerson, plaintiff argues that he

5   repeatedly asked these defendants to retrieve his pain and high blood pressure medications from

6   his cell, but they refused to do so.  According to plaintiff, these defendants were obligated to

7   retrieve his medication because a physician had previously prescribed it for him.  Plaintiff notes

8   that defendant Garrison even recognized in his medical report that plaintiff had difficulty

9   standing in the cell.  Plaintiff contends that defendant Garrison's refusal to provide him with

10  medical care was racially motivated because Garrison has offered no other legitimate reason for

11  not retrieving his medications.  Plaintiff also notes that defendant Garrison treated defendant

12  Kissinger who is white and had a similar injury, but he refused to treat plaintiff because he is

13  African-American.  As a result of defendants' conduct, plaintiff contends that he suffered

14  substantial and unnecessary pain.  Plaintiff notes that once he was transferred to administrative

15  segregation, he spoke with Dr. Sandham who agreed to see him unscheduled and prescribed him

16  Motrin and Baclofen.  Finally, plaintiff observes that after prison officials found him not guilty of

17  the staff assault on defendant Kissinger, he requested medical treatment for his injuries.  On

18  December 26, 2001, Dr. Rohlfing, his primary care physician for more than two years, examined

19  plaintiff and noted that he moved "very slowly" in discomfort from back spasms and that he had

20  pain in his wrist.  Dr. Rohlfing also referred him for physical therapy and planned to re-ducat him

21  to the orthopedic clinic to cast his left forearm.  (Pl.'s SUDF 4, 6, 8, 9 & Attachs. 1, 3, Pl.'s

22  Opp'n to Defs.' Mot. for Summ. J. at 27-34.)

23         Plaintiff also argues that the defendants violated his rights under state law.  For

24  example, he contends that defendant Kissinger racially intimidated him and committed assault

25  and battery against him.  Plaintiff also argues that defendants Kissinger, Peery, and Qualls had an

26  affirmative duty not to use force against him unnecessarily and are to refrain from referring to

1   inmates in a derogatory or discriminatory manner.  Plaintiff contends that defendant Peery

2   nonetheless repeatedly came by his holding cell and said "Hey, you look like a monkey" and

3   "Hey, you look like you've been playing in the mud with monkeys."  (Pl.'s SUDF 5 & Attach. 1,

4   Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 35-40.)

5           Finally, plaintiff argues that defendants are not entitled to qualified immunity.

6   Plaintiff contends that his right to be free from the excessive use of force, his right to receive

7   adequate medical care, and his right to equal protection are clearly established law.  Moreover,

8   plaintiff argues that the defendants are not entitled to qualified immunity with respect to his state

9   law claims for the same reason.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 42-43.)

10  IV.  <u>Defendants' Reply</u>

11          In reply, defense counsel argues that, aside from speculation and conclusions,

12  plaintiff does not provide the court with any evidence disputing defendants' motion for summary

13  judgment.  For example, in response to defense counsel's argument that defendants Baker and

14  Money did not fail to protect him, plaintiff merely speculates that defendants Baker and Money

15  were acting in concert when they wrote their staff assault report but provides no evidence in

16  support of this contention.  (Defs.' Reply at 1-3.)

17          In response to his argument that defendants Ingwerson, Money, and Peery did not

18  fail to supervise their subordinates, defense counsel contends that plaintiff merely speculates that

19  there is a connection between these defendants and the acts of their subordinates.  Counsel argues

20  that while plaintiff contends that defendant Ingwerson "acquiesced" to her subordinates' actions,

21  he has not presented the court with any evidence of a causal connection between defendant

22  Ingwerson and the acts of her subordinates.  (Defs.' Reply at 3.)

23          In response to defense counsel's argument that defendants Garrison, Money, and

24  Ingwerson were not deliberately indifferent to plaintiff's medical needs, plaintiff argues that

25  defendant Garrison is required by law to administer his medications and his failure to do so

26  caused him substantial unnecessary pain.  However, counsel contends that defendant Garrison

1   determined that plaintiff did not have an immediate need for his medication.  Moreover, counsel

2   contends that plaintiff is not a medical expert and may not self-diagnose.  (Defs.' Reply at 3-5.)

3             Defense counsel argues that merely speculates that all of the defendants acted in

4   concert to discriminate against him because they allegedly knew of and agreed with defendant

5   Kissinger's "racial animus."  Counsel notes that plaintiff as the basis for defendant Kissinger's

6   racial animus plaintiff relies on his claim that his cellmate told him he had to "watch out for

7   Hitler."  Counsel argues that even if this statement is admissible hearsay, it does not establish

8   that defendant Kissinger had any intent to discriminate against plaintiff based on his race on

9   August 23, 2001 but rather merely reflects the personal opinion of plaintiff's cellmate.

10  Moreover, counsel repeats that any statements allegedly made by the defendants as they

11  handcuffed plaintiff and escorted him to the program office are insufficient to state a cognizable

12  constitutional claim.  Counsel argues that, aside from his bare speculation, plaintiff has failed to

13  establish any causal connection between the defendants' alleged statements and the their alleged

14  actions.  (Defs.' Reply at 5.)

15            Defense counsel notes that with respect to his claim that the defendants

16  committed a  racially-motivated assault and battery on him in violation of state law, plaintiff

17  asserts that defendant Kissinger's assault and battery was preceded by "racial intimidation."

18  However, aside from plaintiff's speculation and his cellmate's personal opinion of defendant

19  Kissinger, counsel notes that there is no evidence before the court of racial intimidation by any of

20  the defendants.  (Defs.' Reply at 6.)

21            Finally, defense counsel reiterates that all of the defendants are entitled to

22  qualified immunity.  Counsel contends that plaintiff simply concludes, without any evidence, that

23  defendants violated his constitutional rights.  However, defense counsel repeats that there is no

24  evidence that any of the defendants violated plaintiff's constitutional rights.  (Defs.' Reply at 6.)

25  /////

26  /////

**ANALYSIS**

I.  Plaintiff's Eighth Amendment Claims

      A.  Excessive Use of Force

      Defense counsel has not moved for summary judgment on plaintiff's excessive use of force claims against defendants Kissinger, Peery, and Qualls.  Therefore, those claims will be resolved at trial.  As noted above, however, plaintiff has clarified that his "excessive force" claims brought against defendants Baker and Money are actually a claim that those defendants failed to protect him from the excessive use of force by the other defendants.  Defense counsel has moved for summary judgment on this claim against defendants Baker and Money as clarified by plaintiff, and the court will discuss that claim below.

      B.  Failure to Protect

      The court finds that defendants Baker and Money are not entitled to summary judgment on plaintiff's failure to protect claims because they have not met their initial burden of demonstrating the absence of a genuine issue of material fact.  See, e.g., Robbins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995) ("a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene.").  Plaintiff claims that defendants Baker and Money failed to protect him from the alleged use of excessive force by defendants Kissinger and Peery.  To defeat plaintiff's claims, defense counsel has submitted declarations by defendants Baker and Money in which they declare that they did not witness defendants Kissinger or Peery engage in the excessive use of force, nor did they hear plaintiff scream in pain.  (Defs.' Exs. B & E.)  Although defendants Baker and Money may ultimately prevail on this version of the facts at trial, whether defendants Kissinger and Peery engaged in excessive force remains a factual dispute at this time. It is undisputed that defendants Baker and Money were present when the other defendants allegedly used excessive force against plaintiff.  On defendants' motion for summary judgment, the court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts before the court in plaintiff's favor.  Accordingly, the court rejects defense counsel's

argument insofar as it relies on defendants' contested view of whether excessive force was

employed at all.

Defense counsel also argues that even if defendants Kissinger and Peery had

engaged in the excessive use of force, plaintiff admitted in his deposition that he does not know

what defendants Baker and Money did or what they saw at the time of the incident because his

back was turned to the cell door. Defense counsel's argument in this regard is unclear and, in

any event, unpersuasive. To the extent that counsel is arguing that defendants Baker and Money

may have attempted to intervene or protect plaintiff from any excessive force, but that plaintiff

did not see their attempts because his back was to the cell door, the argument fails because it is

unsupported by defendants' declarations. Defendants Baker and Money declare that they were

present at the time plaintiff alleges defendants Kissinger and/or Peery used excessive force

against him but do not state that they attempted to intervene in any manner on plaintiff's behalf.

Nor do defendants Baker and Money declare that they were unable to intervene because, for

example, they were occupied with plaintiff's cellmate or were too far away from the alleged

incident. Rather implicit in their declarations is that defendants Baker and Money believed that

there was no need to intervene. Finally, to the extent the court understands defense counsel's

argument, the court finds it unpersuasive because it contradicts defendants' long-held position

that defendants Kissinger and Peery did not use excessive force in this case, and by extension,

defendants Baker and Money had no need to protect plaintiff or intervene on his behalf.

Accordingly, the court concludes that defendants Baker and Money are not

entitled to summary judgment in their favor on plaintiff's Eighth Amendment failure to protect

claims.[3]

---

[3] In plaintiff's complaint, as well as in his deposition, he also claims that defendants
Kissinger and Qualls failed to protect him from defendant Peery's alleged use of excessive force.
(Compl. at 6-7 & 15, Pl.'s Dep. at 71.) Defense counsel acknowledges plaintiff's claim in this
regard by arguing that defendants Kissinger and Qualls are entitled to qualified immunity with
respect to such claims. For reasons not evident to the court, however, defense counsel has only
moved for summary judgment on the merits of plaintiff's failure to protect claims against

1          C.  Inadequate Medical Care

2          The court finds that defendants Garrison, Ingwerson, and Money are not entitled

3   to summary judgment on plaintiff's inadequate medical care claims because they have not met

4   the initial burden of demonstrating the absence of a genuine issue of material fact.  As an initial

5   matter, the parties do not dispute that plaintiff's high blood pressure and back spasms constitute

6   serious medical conditions.  See McGuckin, 974 F.2d at 1059-60 ("The existence of an injury

7   that a reasonable doctor or patient would find important and worthy of comment or treatment; the

8   presence of a medical condition that significantly affects an individual's daily activities; or the

9   existence of chronic and substantial pain are examples of indications that a prisoner has a

10  'serious' need for medical treatment.")  In this case, both parties have submitted evidence

11  demonstrating that plaintiff has sought and received medical care, including his prescription

12  medication, at HDSP for these medical conditions on multiple occasions.  (Pl.'s Compl., Exs. D

13  & I, Pl.'s SUDF 9 & Attach. 3, Defs.' Ex. I.)  Accordingly, resolution of this aspect of

14  defendants' motion for summary judgment hinges on whether defendants Garrison, Ingwerson,

15  and Money responded to plaintiff's serious medical conditions with deliberate indifference.

16  Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

17          Plaintiff claims that defendant Garrison was deliberately indifferent to his medical

18  needs because he refused to examine plaintiff or allow him to see a doctor and refused to retrieve

19  his prescription medication for pain and high blood pressure while plaintiff was detained in the

20  holding cage.  Defense counsel has submitted a declaration by defendant Garrison in which he

21  states that he examined plaintiff in the program office and determined at that time that plaintiff

22  did not have a medical need for his prescription medications.  (Defs.' Ex. G.)

23  /////

24

25  defendants Baker and Money.  In any event, for the reasons discussed herein, plaintiff's failure to
    protect claims against defendants Baker and Money should proceed to trial along with the failure
26  to protect claims against defendants Kissinger and Qualls.  See also infra Section V.

1        Defendant Garrison's conclusory declaration does not demonstrate the absence of

2    a genuine issue of material fact with respect to plaintiff's claim alleging inadequate medical care.

3    First, in his declaration defendant Garrison does not explain what his medical qualifications are

4    or whether he was adequately trained to determine whether plaintiff had a medical need for his

5    prescription medication while being detained in the holding cage.  See Ortiz v. City of Imperial,

6    884 F.2d 1312, 1314 (9th Cir. 1989) ("access to medical staff is meaningless unless that staff is

7    competent and can render competent care").  In addition, defendant Garrison does not explain

8    how or why he determined plaintiff did not have a medical need for his prescription medication.

9    Defendant Garrison has not referred to or attached to his declaration any supporting

10   documentation, such as his medical report or any of plaintiff's medical records to demonstrate,

11   for example, that plaintiff's prescription did not require him to take his medication at that time.

12   Nor has defendant Garrison indicated that he ever spoke with plaintiff's treating physician or any

13   other physician about plaintiff's medical needs where his prescription medication is concerned.

14   In fact, defendant Garrison's declaration does not even suggest that he bothered to look at

15   plaintiff's medical records to determine whether plaintiff had a medical need for his prescription

16   medication.

17       Defense counsel has also submitted to the court a declaration by Chief Medical

18   Officer Swingle in which she declares that she examined plaintiff's medical records and

19   determined that plaintiff did not have a medical need for his prescription medication.  However,

20   Dr. Swingle has not examined plaintiff and was not present at the time of the alleged events in

21   this case.  Moreover, similar to defendant Garrison's declaration, Dr. Swingle's declaration does

22   not explain how or why she determined plaintiff did not have a medical need for his prescription

23   medication.  Nor does Dr. Swingle indicate that she ever spoke with plaintiff's treating physician

24   about his medical needs where his prescription medication is concerned.

25       It is undisputed that the medications were prescribed for plaintiff by prison

26   doctors.  Having been prescribed, there was presumably a medical need for plaintiff to take the

1   medications.  The conclusory declarations submitted by the defense suggesting otherwise do not

2   demonstrate the absence of a genuine issue of material fact.  Accordingly, the defendants are not

3   entitled to summary judgment in their favor in this respect.[4]

4            Plaintiff also claims that defendants Ingwerson and Money were deliberately

5   indifferent to his medical needs because they refused to retrieve his prescription medication for

6   pain and high blood pressure while he was in the holding cage.  In support of the motion for

7   summary judgment defense counsel has submitted declarations from defendants Ingwerson and

8   Money.  However, neither of the declarations addresses plaintiff's allegations regarding

9   defendants' refusal to provide him with his prescription medication.  Contrary to counsel's

10   argument, plaintiff has alleged much more than defendants Ingwerson and Money "aided and

11   abetted" defendant Garrison's refusal to provide him with adequate medical care.  Rather,

12   plaintiff has expressly alleged in his verified complaint that defendants Money and Ingwerson

13   made no attempt to get his prescription medication even after he repeatedly asked them to do so.

14

15          [4]  Even if defendant Garrison had met his initial burden of demonstrating the absence of a genuine issue of material fact, plaintiff has submitted sufficient evidence to refute that evidence

16   thereby precluding summary judgment in defendant Garrison's favor.  See e.g., Estelle, 429 U.S. at 104-05 (deliberate indifference may manifest "by prison doctors in their response to the

17   prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed"); Lopez v. Smith, 203 F.3d 1122,

18   1132 (9th Cir. 2000) (a prisoner may establish deliberate indifference by showing that a prison official intentionally interfered with his medical treatment); Wakefield v. Thompson, 177 F.3d

19   1160, 1165 (9th Cir. 1999) ("a prison official acts with deliberate indifference when he ignores the instructions of the prisoner's treating physician or surgeon.").  Specifically, according to his

20   sworn deposition testimony, plaintiff repeatedly complained to defendant Garrison that he was experiencing wrist pain and back spasms and that he needed his prescription medications for his

21   high blood pressure and pain, which were readily available in his cell.  In addition, according to plaintiff's deposition testimony, as well as defendant Garrison's own medical report which

22   plaintiff has submitted, Garrison observed that plaintiff could not stand properly in his cell. Nevertheless, defendant Garrison refused to give plaintiff a physical examination or retrieve his

23   prescription medication and instead told him "Well, you can get on the doctors line."  (Pl.'s Dep. at 75-84, Pl.'s SUDF 4 & Attach. 3.)  See, e.g., McGuckin, 974 F.2d at 1059 (a medical need is

24   serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" (quoting Estelle, 429 U.S. at 104)); see also,

25   e.g., Canell v. Bradshaw, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which

26   serve no legitimate penological purpose."), aff'd, 97 F.3d 1458 (9th Cir. 1996).

1    (Compl. at 20.)  As noted above, prison officials may manifest deliberate indifference by

2    "denying or delaying access to medical care or intentionally interfering with the treatment once

3    prescribed."  See Estelle, 429 U.S. at 104-05.

4            Accordingly, the court concludes that defendants Garrison, Ingwerson, and Money

5    are not entitled to summary judgment in their favor on plaintiff's Eighth Amendment inadequate

6    medical care claims.

7    II.  Plaintiff's Equal Protection Claims

8            The court finds that the defendants have borne their initial burden of

9    demonstrating that there is no genuine issue of material fact with respect to plaintiff's equal

10   protection claims.  In this regard, plaintiff claims that defendants deprived him of equal

11   protection when they subjected him to the excessive use of force, failed to protect him, and

12   refused to provide him with adequate medical care, all because he is African American.  In

13   support of the motion for summary judgment, defense counsel has submitted the declarations of

14   defendants Kissinger, Baker, Money, Qualls, and Peery in which they state that they have never

15   intimidated, used or threatened the use of violence, or directed any racial remarks towards

16   plaintiff.  These defendants, as well as defendant Garrison, also declare that they have never

17   witnessed any correctional staff intimidate, use or threaten the use of force, or direct any racial

18   remarks towards plaintiff.  Finally, all of the defendants declare that they are not, and have never

19   been, members of the Ku Klux Klan.  (Defs. Exs. A-E, G.)  Defense counsel has also submitted a

20   declaration from defendant Ingwerson in which she declares that she has never seen anyone

21   intimidate or commit acts of violence against plaintiff on account of him being African

22   American.  She also declares that she is not and never has been a member of the Ku Klux Klan.

23   (Defs.' Ex. F.)  Defendants' evidence in this regard establishes that their alleged unlawful

24   actions, if any, were not racially motivated or based plaintiff's race.  Given this evidence, the

25   burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect

26   to this claim.

1          The court has considered plaintiff's verified complaint, his opposition to the

2   pending motion for summary judgement, and his deposition testimony.  In his complaint plaintiff

3   explains that on August 21, 2001, he and his fellow inmates filed a group appeal alleging that

4   defendant Kissinger improperly targets African American inmates and deliberately attempts to

5   provoke them by searching their cells, directing racial slurs at them, and withholding and

6   contaminating their food.  (Compl. at 5 & 25.)  Plaintiff further alleged that two days after

7   inmates filed this group appeal, defendants Kissinger and Peery engaged in racially-motivated

8   excessive use of force against him while defendants Baker, Qualls and Money stood by and did

9   nothing.  (Id. at 15.)  Plaintiff contends that as defendants Peery and Qualls escorted him to the

10  program office, he tried to explain to them that defendant Kissinger was a racist, but they

11  responded by saying in concert "That's the way we do it," and jerked his arms up above his head.

12  Plaintiff contends that they also referred to themselves as Ku Klux Klansmen.  (Id. at 26, Pl.'s

13  Dep. at 58.)

14          At his deposition plaintiff testified that defendant Peery passed by his holding cell

15  and said "Hey, you look like a monkey," and "Hey, you look like you've been playing in the mud

16  with the monkeys."  (Pl.'s Dep. at 65.)  Plaintiff further testified that defendants Ingwerson and

17  Money also uttered racist comments directed at him.  Specifically, plaintiff told defendant

18  Ingwerson that he knew she had read complaints about defendant Kissinger's racial misconduct,

19  and her response was "you people get together. . . ."  However, before she could finish her

20  response defendant Money told plaintiff to leave his lieutenant alone and claimed "All you

21  people liars anyhow."  (Id. at 67.)

22          Finally, plaintiff explains that defendant Garrison refused to retrieve his

23  prescription medication and treat him, but treated defendant Kissinger's hand injury.  According

24  to plaintiff, defendant Garrison treated defendant Kissinger's hand because he is white and

25  refused to treat plaintiff because he is African-American.  Plaintiff contends that defendant

26  /////

1    Garrison's lack of excuse for obtaining his medication is evidence that he denied plaintiff

2    adequate medical care because of his race.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 29.)

3                As noted above, in considering defendants' motion for summary judgment the

4    court is required to believe plaintiff's evidence and draw all reasonable inferences from the facts

5    before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor, the

6    court finds that plaintiff has submitted sufficient evidence to create a genuine issue of material

7    fact precluding summary judgment in favor of defendants Kissinger, Peery, Qualls, Ingwerson,

8    and Money on plaintiff's equal protection claim.  Defense counsel is correct that verbal

9    harassment and abuse do not violate the Constitution and do not give rise to a cognizable claim

10   under § 1983.  See Austin v. Terhune, 367 F.3d 1167, 1171-72 (9th Cir. 2004); Oltarzewski v.

11   Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987) (vulgar language and verbal harassment do not state

12   a constitutional deprivation under § 1983).  However, defendants' alleged use of racial slurs and

13   other "racially tinged" remarks could convince a reasonable trier of fact by a preponderance of

14   the evidence that defendants' conduct in allegedly violating plaintiff's constitutional rights were

15   racially motivated.  See Serrano, 345 F.3d at 1082-83 (reversing grant of summary judgment

16   because officer's alleged statements that he "[didn't] know what black people think" and that "he

17   was treating [Serrano] like all the rest . . . and that [Serrano] was 'not O.J. Simpson or Johnnie

18   Cochran'" constituted evidence of discriminatory intent and created a genuine issue of material

19   fact as to whether the officer violated the Equal Protection Clause); cf. Freeman v. Arpaio, 125

20   F.3d 732, 738 n.6 (9th Cir. 1997) ("Although not itself rising to the level of a constitutional

21   violation, prison officials' use of abusive language directed at an inmate's religion may be

22   evidence that prison officials acted in an intentionally discriminatory manner."), overruled in part

23   on other grounds by Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).

24                On the other hand, the court finds that plaintiff has failed to submit sufficient

25   evidence raising a genuine issue of material fact with respect to defendants Baker and Garrison in

26   this regard.  At most, plaintiff alleges in his complaint that defendant Baker stood by and did

1   nothing while defendants Kissinger and Peery allegedly engaged in excessive force against him.

2   Even assuming plaintiff's allegations to be true, plaintiff has not provided any evidence to show

3   that defendant Baker intentionally failed to protect him due to plaintiff's race.  Nor has plaintiff

4   provided any evidence tending to show that defendant Baker knew defendants Kissinger and

5   Peery were in any way racially motivated when they allegedly engaged in excessive force against

6   plaintiff.  Similarly, plaintiff alleges that defendant Garrison provided defendant Kissinger with

7   adequate medical care, but he failed to examine plaintiff or provide him with his prescription

8   medication.  Plaintiff assumes that this difference in treatment was based upon his race.  (Pl.'s

9   Dep. at 77.)  However, plaintiff's comparison of the treatment of defendant Kissinger by

10  Garrison to the treatment Garrison accorded plaintiff misses the mark because defendant

11  Kissinger and plaintiff are not similarly situated.  Moreover, even assuming plaintiff's allegations

12  to be true, plaintiff has not provided any evidence tending to show that defendant Garrison

13  intentionally failed to provide him with medical care because of his race.

14          Accordingly, the court concludes that defendants Kissinger, Peery, Qualls,

15  Ingwerson, and Money are not entitled to summary judgment in their favor on plaintiff's

16  Fourteenth Amendment equal protection claims.  The court also concludes, however, that

17  defendants Baker and Garrison are entitled to summary judgment in their favor with respect to

18  plaintiff's Fourteenth Amendment equal protection claims against them.

19  III.  Plaintiff's Supervisory Claims

20          The court finds that defendants Ingwerson, Money, and Peery have borne their

21  initial burden of demonstrating that there is no genuine issue of material fact with respect to

22  plaintiff's supervisory liability claims.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)

23  ("A supervisor is only liable for constitutional violations of his subordinates if the supervisor

24  participated in or directed the violations, or knew of the violations and failed to act to prevent

25  them.").  In this regard, plaintiff claims that defendants Ingwerson, Money, and Peery failed to

26  properly supervise their subordinates on August 23, 2001.  In moving for summary judgment,

defense counsel has submitted the declarations of defendants Ingwerson, Money, and Peery. According to those declarations as well as the undisputed facts of this case, these defendants were not present at plaintiff's cell when defendant Kissinger allegedly engaged in the excessive use of force against plaintiff.  In addition, it is undisputed that defendant Ingwerson was not present at plaintiff's cell when defendant Peery allegedly used excessive force against plaintiff. Moreover, as noted above, defendants Ingwerson, Money, and Peery declare that they have never witnessed any correctional staff intimidate, use or threaten the use of force, or direct any racial remarks towards plaintiff.  Defendants' evidence establishes that they did not participate in or direct any constitutional violations nor did they know of any such violations and fail to prevent them as supervisors.  Given this evidence, the burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to these claims.

The court has considered plaintiff's verified complaint, his opposition to the pending motion for summary judgement, and his deposition testimony and finds that plaintiff has failed to submit any evidence disputing that submitted by defendants.  Specifically, plaintiff argues that defendant Peery was aware of plaintiff's ongoing complaints about defendant Kissinger because Peery reviewed plaintiff's inmate appeal HDSP-C-01-03264.  Therein, plaintiff complained about defendant Kissinger passing by his cell in administrative segregation and dangling handcuffs in front him saying "remember these."  (Pl.'s Attach. 5.)  The parties do not dispute that defendant Peery did in fact review HDSP-C-01-03264.  However, defendant Peery was not assigned the appeal until October 17, 2001, and he did not complete the appeal review until November 21, 2001.  Even if the appeal could serve as evidence that defendant Peery knew of defendant Kissinger's ongoing violations, Peery reviewed inmate appeal HDSP-C-01-03264 well after defendant Kissinger's alleged use of excessive force took place.  Even if the court goes as far back as August 2001, when plaintiff and his fellow inmates filed their group appeal alleging that defendant Kissinger improperly targets African American inmates, defendant Peery was not assigned that appeal until September 4, 2001, and did not complete the appeal

1   review until October 4, 2001.  Again, that was well after defendant Kissinger's alleged use of

2   excessive force against plaintiff took place.

3           Finally, plaintiff has provided no evidence to the court demonstrating that either

4   defendants Ingwerson or Money personally participated in the violation of plaintiff's

5   constitutional rights or directed any of their subordinates to do so or that they knew of such civil

6   rights violations by their subordinates and failed to act to prevent them.  Plaintiff merely

7   speculates that defendant Ingwerson knew of defendant Kissinger's alleged prior racially-

8   motivated misconduct.  Plaintiff's mere speculation, however, is insufficient to raise a genuine

9   issue of material fact precluding summary judgment in defendant Ingwerson's favor.  Likewise,

10  plaintiff only speculates that defendants Ingwerson and Money heard defendant Peery utter racist

11  comments directed at plaintiff him while in the holding cell.  Again, such speculation is not

12  enough to defeat summary judgment.  Moreover, even if defendants Ingwerson and Money heard

13  defendant Peery utter such comments, defendants may only be held liable for failing to act in

14  connection with constitutional violations of their subordinates.  As noted above, verbal

15  harassment and abuse alone do not constitute constitutional violations.  See Austin, 367 F.3d at

16  1171-72; Oltarzewski, 830 F.2d at 139.  To be sure, racial slurs or racially tinged remarks can

17  constitute evidence that a defendant's alleged violations of plaintiff's constitutional rights were

18  racially motivated.  See Serrano, 345 F.3d at 1083.  However, defendant Ingwerson and Money's

19  overhearing of such remarks by defendant Peery is not evidence that they personally participated

20  in, directed, or knew of and failed to prevent, any specific constitutional violations by defendant

21  Peery.  Finally, a supervisory defendant may only be held liable if there is a sufficient causal

22  connection between the supervisor and the alleged constitutional violations.  Here, there is no

23  evidence suggesting a causal connection between defendant Ingwerson and Money's alleged

24  conduct and the alleged constitutional violations in this case.  See Fayle, 607 F.2d at 862;

25  Mosher, 589 F.2d at 441.

26  /////

34

1    Accordingly, the court concludes that defendants Ingwerson, Money, and Peery

2   are entitled to summary judgment in their favor with respect to plaintiff's supervisory capacity

3   claims.

4   IV.  Plaintiff's State Law Claims

5    Plaintiff's state law claims are premised on the same allegations as his excessive

6   use of force and equal protection claims.  As discussed above, whether defendants Kissinger and

7   Peery used excessive force is a disputed factual issue.  Similarly, whether defendants Kissinger

8   and Peery's alleged use of excessive force was racially motivated remains a disputed issue of

9   fact.  Drawing all reasonable inferences from the evidence before the court in plaintiff's favor,

10  the court finds that triable issues of material fact exist as to plaintiff's state law claims as well.  In

11  this regard, a reasonable jury could conclude that defendants Kissinger and Peery violated the

12  Ralph Civil Rights Act and the Bane Civil Rights Act.  See, e.g., Cole v. Doe 1 Thru Doe 2

13  Officers, 387 F. Supp. 2d 1084, 1103 (N.D. Cal. 2005) (denying defendants' motion for summary

14  judgment on Bane Act claims because "[u]se of law enforcement authority to effectuate a stop,

15  detention (including use of handcuffs), and search can constitute interference by 'threat[],

16  intimidation, or coercion' if the officer lacks probable cause to initiate the stop, maintain the

17  detention, and continue a search."); Spears v. City & County of San Francisco, No. C 06-4968

18  VRW, 2008 WL 2812022 at *13-14 (N.D. Cal. July 21, 2008) (denying Sheriff Deputy's motion

19  for summary judgment on former female inmate's Bane Civil Rights Act claim because the

20  plaintiff offered ample evidence that the deputy interfered with her right to be free from sexual

21  assault); Bates v. Arata, No. C 05-3383 SI, 2008 WL 820578 at *26-27 (N.D. Cal. Mar. 26,

22  2008) ("The only Bane Act claims that survive summary judgment are the excessive force

23  claims. . . ."). Cf. Kincaid v. City of Fresno, No. CIV F-06-1445, 2008 WL 2038390 at *15-16

24  (E.D. Cal. May 12, 2008) (denying plaintiff's motion for summary judgment on a Bane Civil

25  Rights Act claim because defendants "raised substantial disputed issues of material fact"

26  regarding their alleged interference with plaintiff's right to possess property).

1    Accordingly, the court concludes that defendants Kissinger and Peery are not

2  entitled to summary judgment in their favor with respect to plaintiff's state law claims.

3  V.  Qualified Immunity

4    As noted above, the facts alleged in this case taken in the light most favorable to

5  plaintiff are sufficient, if proven, to demonstrate that defendants failed to protect plaintiff[5] and

6  failed to provide him with adequate medical in violation of the Eighth Amendment.  The facts

7  alleged by plaintiff are also sufficient, if proven, to demonstrate that defendants deprived him of

8  equal protection under the law in violation of the Fourteenth Amendment.

9    The state of the law in 2001 clearly would have given defendants fair warning that

10  their conduct was unconstitutional.  The United States Supreme Court has recognized:

11      [G]eneral statements of the law are not inherently incapable of
        giving fair and clear warning, and in other instances a general
12      constitutional rule already identified in the decisional law may
        apply with obvious clarity to the specific conduct in question, even
13      though "the very action in question has [not] previously been held
        unlawful."

14

15  United States v. Lanier, 520 U.S. 259, 271 (1997) (quoting Anderson v. Creighton, 483 U.S. 635,

16  640 (1987)).  By 2001, it was well established that prison officials have a duty to protect

17  prisoners from violence.  Farmer, 511 U.S. at 833.  In this case, defendants Baker, Money,

18  Kissinger, and Qualls were on notice that they could not simply stand by as other officers

19  engaged in the excessive use of force against plaintiff.  Similarly, by 2001, it was well

20  established that prison officials could not be deliberately indifferent to a prisoner's serious

21  _____

22      [5]  Defense counsel argues that defendant Kissinger is entitled to qualified immunity
    from plaintiff's failure to protect claims because, just as is the case for defendants Baker and
    Money, defendant Kissinger did not witness defendant Peery use excessive force and plaintiff
23  admits that he could not see defendant Kissinger at the time in question because his back was to
    the cell door.  Counsel also summarily argues that defendant Qualls is entitled to qualified
24  immunity because there is no evidence that he failed to protect plaintiff from defendant Peery's
    alleged use of excessive force.  Presumably, counsel's argument on behalf of defendant Qualls is
25  the same as his argument on behalf of defendants Baker, Money, and Kissinger.  For the same
    reasons the court rejected those arguments advanced on behalf of defendants Baker and Money,
26  the court rejects them with respect to defendants Kissinger and Qualls.  See supra Section I.B.

1   medical needs or deny, delay, or intentionally interfere with medical treatment for a prisoner's

2   serious medical needs. Estelle, 429 U.S. at 104-06. Here, defendants Garrison, Money, and

3   Ingwerson were on notice that they could not ignore plaintiff's medical needs such as seeing a

4   doctor and being allowed to take his prescription medication. In 2001, it was also well

5   established that prison officials could not discriminate against prisoners based on their race.

6   Wolff, 418 U.S. at 556. Thus, defendants Kissinger, Peery, Qualls, Ingwerson, and Money were

7   on notice that they could not deprive plaintiff of his constitutional rights because he is African-

8   American.

9          Accordingly, the court concludes that defendants are not entitled to summary

10  judgment in their favor with respect to their affirmative defense of qualified immunity.

11                                    **OTHER MATTERS**

12         Also pending before the court are several of plaintiff's requests. First, plaintiff

13  has requested appointment of a medical expert or, in the alternative, an order excluding Dr.

14  Swingle's declaration from evidence as unreliable. Defendants have filed an opposition to the

15  request, arguing that there is no evidence that Dr. Swingle's declaration is unreliable and, in any

16  event, the court cannot consider the credibility of a witness when ruling as a matter of law.

17  Plaintiff has filed a reply, reiterating his view that the court should exclude Dr. Swingle's

18  declaration.

19         The expenditure of public funds on behalf of an indigent litigant is proper only

20  when authorized by Congress. See Tedder v. Odel, 890 F.2d 210 (9th Cir. 1989). The in forma

21  pauperis statute does not authorize the expenditure of public funds for a medical expert. See 28

22  U.S.C. § 1915. As discussed above, the court will recommend that defendants' motion for

23  summary judgment on plaintiff's inadequate medical care claim be denied notwithstanding Dr.

24  Swingle's declaration. Accordingly, the court will deny plaintiff's request for the appointment of

25  a medical expert or for an order excluding Dr. Swingle's declaration.

26  /////

1    Second, plaintiff has requested that judicial notice be taken of his statement of

2  undisputed facts and certain exhibits attached thereto.  Judicial notice of adjudicative facts is

3  appropriate with respect to matters that are beyond reasonable dispute in that they are either

4  generally known or capable of accurate and ready determination by resort to a source whose

5  accuracy cannot reasonably be questioned.  See Fed. R. Evid. 201 and advisory committee notes.

6  Plaintiff's request is both improper and unnecessary.  Accordingly, the court will deny it.

7    Plaintiff next requests the "document submission sheet" that is utilized to submit

8  exhibits into evidence at trial.  The court is not clear what document plaintiff is requesting.

9  Moreover, the instant case is not yet scheduled for trial.  At the appropriate time, the court will

10 instruct plaintiff on how to file and mark his trial exhibits.  Accordingly, the court will deny

11 plaintiff's request at this time .

12    Finally, plaintiff has requested appointment of an independent arbitrator to help

13 settle this case.  If the assigned district judge adopts these findings and recommendations, the

14 undersigned will require the parties to file pretrial statements.  In their pretrial statements, the

15 parties will have an opportunity to express their desire or lack thereof for a settlement

16 conference.  If appropriate, the court will schedule a settlement conference thereafter.

17 Accordingly, the court will deny plaintiff's request.

18                                      **CONCLUSION**

19    IT IS HEREBY ORDERED that:

20    1.  Plaintiff's November 21, 2008 request for appointment of a medical expert or,

21 in the alternative, an order excluding Dr. Swingle's declaration (Doc. No. 149) is denied;

22    2.  Plaintiff's January 26, 2009 and January 30, 2009 requests for judicial notice

23 (Doc. Nos. 156 & 160) are denied;

24    3.  Plaintiff's February 11, 2009 request for a document submission sheet (Doc.

25 No. 166) is denied; and

26 /////

4. Plaintiff's March 9, 2009 request for an independent arbitrator (Doc. No. 171) is denied.

IT IS HEREBY RECOMMENDED that defendants' October 9, 2008, motion for summary judgment (Doc. No 142) be granted in part and denied in part as follows:

1. Defendants' motion for summary judgment with respect to plaintiff's failure to protect claims against defendants Baker and Money be denied;

2. Defendants' motion for summary judgment with respect to plaintiff's inadequate medical care claims against defendants Garrison, Money, and Ingwerson be denied;

3. Defendants' motion for summary judgment with respect to plaintiff's equal protection claims be denied as to defendants Kissinger, Peery, Qualls, Ingwerson, and Money, but be granted as to defendants Baker and Garrison;

4. Defendants' motion for summary judgment on plaintiff's supervisory capacity claims against defendants Ingwerson, Money, and Peery be granted;

5. Defendants' motion for summary judgment with respect to plaintiff's state law claims against defendants Kissinger and Peery be denied; and

6. Defendants' motion for summary judgment with respect to their affirmative defense of qualified immunity be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

/////

/////

/////

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: July 13, 2009.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
davi0878.57(2)